338

[Civ. No. 5421. Third Appellate District.—April 21, 1936.]

B. M. ANDERSON, Respondent, v. CALAVERAS CEN-
TRAL MINING CORPORATION (a Corporation), Ap-
pellant.

Wm. M. Abbott, K. W. Cannon, Cyril Appel, Ivores R. Dains and Philip C. Boardman for Appellant.

Cornish & Cornish for Respondent.

THOMPSON, J.—The defendant has appealed from a judgment which was rendered against it in a suit based on assigned claims for labor performed for the Victor Land and Mineral Company, the predecessor of the defendant corporation, which claims the appellant promised to pay. Subsequent to the performance of the labor, in part consideration of the defendant's agreement to pay these labor claims, all of the assets of the Victor Land and Mineral Company were sold and transferred to the defendant.

This is a companion case with the action entitled "*Montreeville* v. *Victor Land & Mineral Co.*" (*post*, p. 753 [57 Pac. (2d) 565]), in which this court has today filed an opinion. These two cases involve the same labor claims. The complaint in the Anderson case was filed February 26, 1932, and is based on a written contract by the terms of which the Calaveras Central Mining Corporation assumed and agreed to pay the labor claims. The amended complaint in the Montreeville case was filed August 5, 1927, against the original debtor, upon one of the same claims. The cases were tried together. The appeal is presented on the same transcript of evidence. Separate findings and judgments were adopted in each case. These judgments were both favorable to the plaintiffs. Each judgment provides that its payment, or any part thereof, shall be credited on both judgments. Separate appeals from these judgments were perfected by the respective defendants.

The complaint in the Anderson case contains three counts. The first count demands payment for labor performed by C. R. Montreeville in behalf of the Victor Land and Mineral

Company prior to March 10, 1927, of the reasonable and agreed value of $1,024. The second count demands payment for labor performed by J. A. Montreeville for the same company, prior to March 10, 1927, of the reasonable and agreed value of $7,360. The third count demands payment of money advanced by J. A. Montreeville to the same company prior to March 10, 1927. It is alleged these claims were all·assigned to the plaintiff, and that by the terms of a written contract which was executed on the last-mentioned date, all of the assets of the Victor Land and Mineral Company were sold and transferred to the Calaveras Central Mining Corporation, in part consideration for which the last-mentioned corporation agreed to assume and pay these claims. To this written agreement there was attached as an exhibit and made a part thereof an itemized list of all claims which the grantee assumed and promised to pay, including those which are involved in this suit. The material language of that agreement reads as follows:

"The party of the first part (Calaveras Central Mining Corporation) does hereby assume and agree to pay, within the period of twelve (12) months from the date hereof, or within said time secure the release and discharge of the party of the first part and its stockholders of and from, the outstanding obligations and indebtedness owing by said Victor Land and Mineral Company on March 6th, 1926, which said obligations and indebtedness are set forth and described in Exhibit 'A' hereto attached, and made a part hereof. . . .

### "EXHIBIT 'A'

. . . . . . . .

### Labor Claims.

C. R. Montreeville from 7/1/25 to 2/28/26.......$1,024.00
Cash advanced by J. A. Montreeville............ 35.47
Back salary of J. A: Montreeville to Feb. 28, 1926.. 7,360.00"

To this complaint the defendant demurred on the ground that it failed to state facts sufficient to constitute a cause of action. The demurrer was overruled. An answer was then filed denying the indebtedness and the material allegations of the complaint. It is affirmatively alleged in the answer that the obligations were merely conditionally assumed by the terms of the contract by specifying therein that the defendant "does hereby assume and agree to pay, within the

period of twelve (12) months from the date hereof, or within said time secure the release and discharge of the party of the first part and its stockholders of and from, the outstanding obligations and indebtedness . . . '' No such release of claims is alleged or proved. The answer also asserts that C. R. Montreeville repudiated the agreement by the terms of which the defendant assumed and promised to pay his claim; that the claim for salary is illegal and void for the reason that it was not legally authorized by the mining company, and that the claims are barred by the statute of limitations.

At the trial of this case the court adopted findings favorable to the plaintiff and rendered judgment against the defendant in the sum of $7,719.47. From this judgment the defendant has appealed.

The appellant contends that the findings and judgment are not supported by the evidence; that the agreement upon which this action is based is not an unqualified acceptance and promise to pay the claims owed by the grantor of the assets of the mining company, and that it is therefore not binding on the defendant; that the contract was not accepted, but on the contrary, was repudiated by the claimant by commencing an action therefor against the Victor Land and Mineral Company prior to the time the claims became due and payable under the terms of the agreement; that the defendant is entitled to set up any valid defense which might have existed against the original debtor, and that one of the claims is illegal and void for the reason that the salary of J. A. Montreeville was not authorized or allowed by a valid resolution of the board of directors of the corporation, and that each of the claims is barred by the statute of limitations.

The written contract which was executed for a valuable consideration March 10, 1927, between the Victor Land and Mineral Company and the Calaveras Central Mining Corporation covenanted to transfer all of the assets of the first-mentioned company to the last-named corporation, with an express agreement on the part of the grantee to assume and pay all outstanding indebtedness of the grantor, including the plaintiff's claims which were therein specifically designated and mentioned. This contract created a liability on the part of the Calaveras Central Mining Corporation to pay those claims on the terms expressed in the contract. Since

the contract was made in part for the benefit of creditors named therein, it creates a liability against the promisor for the satisfaction of which the creditor or his assignee may maintain an action against it. (*Bogart* v. *George K. Porter Co.*, 193 Cal. 197 [223 Pac. 959, 31 A. L. R. 1045] ; 6 Cal. Jur. 469, sec. 279; 2 Elliott on Contracts, p. 666, sec. 1411; 6 R. C. L. 882, sec. 271; 1 Restatement of the Law of Contracts, p. 151, sec. 133, and Cal. Supp. of 1933, subd. 1 of sec. 133 of the last-mentioned citation.) In the text of the supplement last mentioned a large number of California cases are cited in support of that doctrine. In section 133 of the Restatement of the Law of Contracts, *supra,* the third party in whose favor an agreement to assume and pay obligations is made is appropriately termed "a creditor beneficiary". Section 1559 of the Civil Code recognizes such a third party claim as valid and enforceable against the promisor. Regarding the basis of the rule which recognizes the right of a third party claimant to maintain an action against the promisor who, for a valuable consideration, assumes and promises to pay obligations due from the promisee, it is said in 6 Ruling Case Law, section 271, at page 885 :

"The rule has been variously stated as resting upon a trust relationship, the equitable right of subrogation, agency; privity of contract by substitution, or the broad equity of the transaction."

Since our statute and a multitude of California cases recognize the rule it is immaterial which of the previously suggested grounds the rule rests upon.

The commencement of this action by the assignee of the creditor beneficiary was a sufficient acceptance of the benefits of the contract in his behalf. A prior formal acceptance of the benefits of the contract by the creditor beneficiary was unnecessary. The assent of the beneficiary will be presumed from the instituting of the action. (*More* v. *Hutchinson,* 187 Cal. 623 [203 Pac. 97] ; *Bryan* v. *Banks,* 98 Cal. App. 748, 758 [277 Pac. 1075] ; 6 R. C. L. 889, sec. 276 ; 2 Elliott on Contracts, 672, sec. 1414; 13 C. J. 711, sec. 1817.)

The contract was not repudiated by the creditor beneficiary, C. R. Montreeville, nor were the benefits thereof rejected by him, by his prior commencement of a suit for the recovery of the same claim against the Victor Land and Mineral Company. He had a right to look to either or both parties to

that contract for the recovery of his claim. His prior suit against the promisee named in the contract was commenced in August, 1927, before the statute of limitations had expired against the original obligation and before the claim matured against the Calaveras Central Mining Corporation, by the express terms of the agreement, which provides that the promisor "does hereby assume and agree to pay, *within the period of twelve (12) months* from the date hereof, . . . (March 10, 1927) the outstanding obligations and indebtedness". Regarding the liability of both parties to the contract under circumstances similar to those which are presented by this case, it is said in volume 1, Restatement of the Law of Contracts, page 167, section 141:

"A creditor beneficiary *who has an enforceable claim* against the promisee can get judgment against either the promisee or the promisor or against each of them on their respective duties to him. Satisfaction in whole or in part of either of these duties, or of judgments thereon, satisfies to that extent the other duty or judgment."

In the present case the separate suits in behalf of C. R. Montreeville and the other claimants, against the promisee and the promisor were tried together, and judgments were rendered in both cases in plaintiffs' favor with the express provision therein that payment in whole or in part of either judgment should be deemed to be satisfaction to that extent of the other concurrent judgment. This procedure is in exact accord with the preceding statement of law.

■ The language of the contract heretofore quoted constitutes an absolute acceptance and promise to pay the indebtedness "within the period of twelve months" from the date of that instrument, unless the promisor within that time otherwise procures the release and discharge of the obligations listed therein. This release it failed to obtain. The release and discharge of those debts was neither pleaded nor proved. That option is not a condition which defeats the liability of the Calaveras Central Mining Corporation under the terms of the contract.

■ Neither suit was barred by the provisions of the statute of limitations. The first suit was not barred at the time it was instituted for the reasons we shall hereafter assign. The statute of limitations did not commence to run in the present Anderson suit under the terms of the contract until

twelve months from the date of the contract, which date of maturity was March 10, 1928. The statute of limitations did not expire in this suit until four years thereafter. This suit was commenced February 26, 1932. It is true that the obligation to pay the indebtedness created by the new promise according to the terms of the contract is subject to the provisions of section 337 of the Code of Civil Procedure and accrues "after the assumption thereof by the promisor . . . when, upon the maturity of the original indebtedness, the promisor failed to pay the same". (*Bogart* v. *George K. Porter Co.*, 193 Cal. 197 [223 Pac. 959, 31 A. L. R. 1045].) In the present case, since the Calaveras Central Mining Corporation did not agree to pay the claim until twelve months from the date of the contract which was executed March 10, 1927, the obligation on its part matured March 10, 1928, and the statute of limitations did not expire until four years thereafter.

The rule is well settled that if one assumes and agrees to pay another's debt, which is past due but not barred at the time of the promise, the statute of limitations, as between the promisor and the creditor, runs only from the date of the new undertaking, and not from the original date of maturity of the debt. In effect, the new agreement to assume and pay the obligation is a waiver of so much of the statute of limitations as had already run on the original indebtedness prior to the new promise to pay the debt according to the terms of the subsequent contract. (*Bogart* v. *George K. Porter Co., supra; Daniels* v. *Johnson,* 129 Cal. 415 [61 Pac. 1107, 79 Am. St. Rep. 123] ; *Sherwood & Sherwood* v. *Gill & Lutz,* 36 Cal. App. 707 [173 Pac. 171] ; *Davis* v. *Davis,* 19 Cal. App. 797 [127 Pac. 1051] ; 31 A. L. R. 1056, note.)

The appellant contends that the findings and judgment are not supported by the evidence for the reason that the portion of the labor claim which is based on the unpaid salary of J. A. Montreeville as secretary of the Victor Land and Mineral Company is illegal and void since his salary was fixed by resolution of the company adopted with his concurrent vote as a member of the board of directors, and that the salary claim was barred by the statute of limitations at the time of the execution of the contract by the terms of which the Calaveras Central Mining Company accepted and agreed to pay the indebtedness of the former company.

We are of the opinion the salary claim of J. A. Montreeville is neither illegal for the reason that it was fixed by his concurrent vote as a member of the board of directors, nor is it unenforceable because it was barred by the statute of limitations. The salary was fixed at a regular meeting of the board, attended by all five directors, of which board J. A. Montreeville was a member. While Montreeville signed the minutes of that meeting as secretary of the board, it does not affirmatively appear that he voted upon the resolution fixing his salary as secretary of the board. Even though he may have done so, there were four other directors who participated in the proceedings of that meeting, three of whom were not officers of the company whose salaries were affected thereby. Assuming that the members of the board voted unanimously for that resolution, the result would have been the same with or without the vote of the secretary. His vote would therefore have been ineffectual. Nor does it appear that the salary of the secretary which was fixed by the resolution was exorbitant.

Assuming, without so deciding, that the rule of law prevails as suggested by the case of *Mottashed* v. *Central & Pacific Imp. Corp.*, 8 Cal. App. (2d) 256 [47 Pac. (2d) 525], and in volume 1, Restatement of the Law of Contracts, page 165, section 140, that obligations may be enforced by a creditor beneficiary only when they were valid and enforceable against the promisee at the time the agreement to assume and pay them was made, and that any defense thereto which was available to the promisee is also available to the promisor, we are of the opinion the salary claim of J. A. Montreeville was neither invalid on the ground that his compensation was fixed by the concurrence of his vote as a director of the company, nor unenforceable because it was barred by the statute of limitations. On the contrary, there is substantial evidence to support the findings and judgment that it is valid and enforceable against either the promisor or the promisee.

It is true that the resolution of a corporation fixing the salary of an officer thereof with the necessary concurrence of his own vote, or when it is procured by fraud or coercion on his part is voidable. But there is ample authority and good reason for holding that in the absence of fraud or coercion on the part of an officer, where the charter or by-laws provide for the fixing of salaries by a majority of the board of direc-

tors, a resolution regularly adopted by a majority vote of the board of directors whose salaries are not affected thereby is valid even though that officer also participated therein, provided the salary does not appear to be excessive. (14A C. J., p. 143, sec. 1908; 3 Thompson on Corporations, 3d ed., p. 448, secs. 1859–1861; *Zellerbach* v. *Allenberg*, 99 Cal. 57 [33 Pac. 786].) With respect to the validity of the resolution of a board of directors of a corporation fixing the salary of an officer, it is said in 3 Thompson on Corporations, page 450 et seq., *supra:*

"The resolution must be passed at a meeting attended by a quorum qualified to vote on the resolution. . . . The compensation, where authorized, must not be unreasonably disproportionate to the services rendered. . . .

"A resolution of a board of directors fixing the salary of one of the members as an officer of the corporation, will not be held invalid merely because the director himself voted, where it appears that a majority of the board voted for the resolution without the vote of the interested director."

Regarding the same subject it is also said in 14A C. J., page 143, section 1908:

"The director who claims compensation for his services, being disqualified from voting on the question, if he is necessary to make up a quorum of the board, or if his vote is necessary to the result, the resolution will be void. But where his vote is not necessary to the adoption of such a resolution it will not necessarily be void, although he may have voted for it, or although he may have been present when the vote was taken."

In this case the by-laws authorize the board of directors to fix the salaries of its officers. The secretary's salary was fixed by resolution of the board of directors of the Victor Land and Mineral Company at a regular meeting attended by all five directors, including J. A. Montreeville, who was also a member of the board. It does not affirmatively appear that he personally voted on the adoption of that resolution, although, as secretary, he did approve and sign the minutes of the meeting. That resolution fixed his salary as secretary and superintendent at $300 a month, one-half of which was to be paid each month in cash. The resolution provides that the remaining half of his salary was to be credited each month to his account on the books of the company and paid "when

the mine of the company is *unwatered* or active development work is actually begun''. The burden was on the defendant to show that the resolution was invalid. No such evidence appears in the record. In addition to the secretary and the president of the company, who were then present, three other disinterested directors, whose salaries were not involved therein, participated in the proceeding. In the absence of fraud or coercion, their affirmative vote was sufficient to render the resolution valid even though the secretary concurred therein.

It is true that at subsequent meetings of the board of directors held on July 11, 1922, and on January 1, 1925, there was a mere quorum of the board present consisting of three members, including the secretary, J. A. Montreeville, and that their action would have been voidable if they had attempted to increase his salary at those meetings. But at neither of these meetings was his salary increased. The action of the board at these last-mentioned meetings in no way affects the validity of his salary as it was fixed by the directors at the meeting which was held April 28, 1920. At the meeting of July 11, 1922, the board merely voted to pay the secretary $200 in cash each month in lieu of the $150 per month which had been previously paid in cash. This amounted to a mere change in the arrangement as to when and how the salary was to be paid. There is evidence that the mine became "unwatered" February 1, 1921. Since that was the circumstance or condition upon which the impounded or deferred portion of his previously fixed salary of $300 a month was to be payable, the secretary was then entitled to the entire amount of $300 a month, and the agreement to accept $200 a month cash and leave the remainder impounded to his credit in no way increased his salary. Even though it be conceded the resolution of July 11, 1922, was voidable, it did not affect the validity of the previous resolution fixing the amount of his salary.

Nor did the resolution which was adopted at the meeting of January 5, 1925, affect the salary of the secretary, except that since J. A. Montreeville agreed to the resolution then adopted and signed the minutes to that effect, it may amount to a waiver on his part of a portion of the accrued and unpaid salary then due to him over and above the sum of $6,050. On the last-mentioned date the board adopted a resolution

finding that the total sum of accrued salary which was due, credited to the secretary's account and unpaid between May 1, 1920, and January 1, 1925, as shown by the book account thereof, was the aggregate amount of $8,200, all of which he then waived, except the sum of $6,050. The defendant may not complain that the secretary saw fit to waive a part of the accrued salary which was due to him. The court accepted that waiver as binding on him, and estimated his salary on the basis of $6,050, which he was willing to accept up to January 1, 1925. It may be conceded that this resolution could not bind the defendant as an account stated and acknowledged to be due by the company. The amount of salary found by the court to have been due the secretary prior to January 1, 1925, is not dependent on this invalid resolution. Photographic copies of the pages constituting the corporation's book account of the secretary's salary were received in evidence, showing that the company owed him a sum in excess of $6,050 prior to January 1, 1925, which had accumulated and was credited to his account pursuant to the valid resolution of April 28, 1920, fixing his salary. The balance of the judgment which was rendered in his favor accrued since January 1, 1925.

 Nor was the accrued salary fund barred by the statute of limitations at the time the Calaveras Central Mining Corporation, by the contract of March 10, 1927, accepted that obligation and promised to pay it, for the reason that each item thereof was entered in the corporation's open book account of his salary and credited to him, as provided by the original resolution of April 28, 1920. Section 337 of the Code of Civil Procedure provides that an action may be brought "upon a book account whether consisting of one or more entries", or upon "a balance due upon a mutual, open and current account", within four years. It has been held that an action on an open book account is not barred until four years have elapsed since the entry of the last item in the account. (*Bailey* v. *Hoffman*, 99 Cal. App. 347 [278 Pac. 498]; *Egan* v. *Bishop*, 8 Cal. App. (2d) 119 [47 Pac. (2d) 500]; *Shanklin* v. *Scribner*, 62 Cal. App. 487 [217 Pac. 130].) In the case last cited it is held that a book account which is kept by a corporation in which "the corporation was charged with plaintiff's salary from month to month and credited with payments thereon as made from time to time, . . . is an open book account. . . . 'Payment made and entered upon the open book

account tolls the statute.' (*Furlow P. B. Co.* v. *Balboa L. & W. Co.*, 186 Cal. 754 [200 Pac. 625].)'' In other words, it is here held the statute of limitations begins to run from the date of the last entry of the book account.

In the present case the last entry which appears in the book account affecting the secretary's salary is November 30, 1926. That account was therefore not barred by the statute of limitations March 10, 1927, when the appellant assumed the indebtedness and promised to pay the deferred salary.

The assessments which were subsequently levied against this stockholder's shares appear to have been properly charged and deducted from the balance due to the claimant, J. A. Montreeville.

The judgment is affirmed.

Tuttle, J., *pro tem.*, and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 21, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 19, 1936.