### GANDELMAN v. MERCANTILE INS. CO. OF AMERICA et al.

No. 12606.

United States Court of Appeals Ninth Circuit.

March 12, 1951.

Rehearing Denied April 10, 1951.

Don Marlin, Los Angeles, Cal., for appellant.

Hindman & Davis and E. Eugene Davis, Los Angeles, Cal., for appellees.

Before HEALY, BONE and ORR, Circuit Judges.

ORR, Circuit Judge.

This appeal is from a summary judgment denying appellant a recovery on two separate policies of fire insurance alleged to have been in effect on April 11, 1947, at which time appellant suffered the loss of his entire stock of merchandise. A signed statement of facts was filed. The question presented is whether there is a material fact in dispute which, if resolved in favor of appellant, could support the conclusion that there existed a valid contract, binding on appellees. For the reasons hereinafter stated we reach the conclusion that the question must be answered in the negative and the judgment affirmed.

This is a diversity suit and all of the events concerned having taken place in the state of California a determination is to be made in accordance with California law.

In 1946 appellant was engaged in the furniture business in the city of Los Angeles. He insured his stock of merchandise through one Oelsner, a Los Angeles insurance broker representing numerous fire insurance companies, including appellees, and the National Fire Insurance Company of Hartford, Connecticut. In 1946 National (through its agent Oelsner) issued to appellant a provisional reporting form policy, insuring appellant's merchandise against loss by fire for the provisional amount of $100,000, being 100% of the total contributing insurance with a limit of liability for all contributing insurance of $175,000.

Appellant, during February and March 1947, purchased large quantities of furniture, and sometime during the latter part of March he requested Oelsner to increase the total limit of liability to $200,000, to which request Oelsner replied: "You are covered." The alleged conversation did not include a discussion of the manner in which the increase was to be accomplished or the companies with which the increase was to be placed. No further information relative to insurance coverage came to appellant's attention until after his stock of merchandise had been destroyed by fire on April 11, 1947.

On April 2, 1947 National's manager requested Oelsner to reduce the limit of liability from 100% of $175,000 to 50% of $140,000, and to try to place the balance of the insurance elsewhere. It is stipulated that an endorsement so providing was delivered to Oelsner, as agent for National, on that date, and that at Oelsner's request National amended the endorsement on April 3 to provide for the provisional amount of $50,000, being 35% of the total contributing insurance, with a limit of liability for all contributing insurance of $200,000.

On or about April 2 the two policies in suit were issued by appellees and delivered to Oelsner. The Mercantile policy was issued for the provisional amount of $5,000, being 5% of the total contributing insurance, with a limit of liability for all contributing insurance of $200,000. The Reliance policy was issued for the provisional amount of $12,500, being 7½% of the total contributing insurance, with a limit of liability for all contributing insurance of $200,000. It is further stipulated that these policies were issued at the request of Oelsner, acting as agent for appellees. On or about May 17, 1947, after the fire, the policies were delivered by Oelsner to appellant. This was the first information appellant had of their existence. Shortly after the two policies in suit were issued and before the fire, Oelsner requested National to bind the remaining 52½% of the risk and National agreed. The existence of this binder remained unknown to appellant until after the fire. It is agreed that the value of appellant's merchandise destroyed by fire

amounted to $143,978.96. By the terms of its policy issued to appellant National became liable to appellant for 100% of the value of his stock last reported, in accordance with the value reporting clause of the policy. The last value thus reported, according to National, was $101,766.95. There is testimony to the effect that a disagreement arose between National and appellant as to whether a written report was required. Appellant insists that his controversy with National did not relate to the amount reported but whether National was liable for 35% of the total loss (about $50,000) or 87½% of the total loss (about $125,000), i. e., whether the 52½% binder was effective. Whatever the nature of the dispute, it was settled for the sum of $101,766.95, and on July 16 appellant signed an agreement releasing National from all liability for the loss.

Appellant has conceded in this court and in the trial court that throughout negotiations, Oelsner was acting as agent of the insurance companies, and that no person acting "for or in * * * behalf" of appellant had any knowledge of the two policies issued by appellees until about May 17, 1947. At the time of the conversation between Oelsner and appellant wherein appellant requested additional coverage and Oelsner replied: "You are covered," Oelsner was not acting specifically in behalf of appellees here and his answer obviously did not purport to bind these appellees, hence, no contract then existed between appellant and appellees. Appellant insists, however, that subsequent events gave rise to a contract, imposing some sort of contractual liability on appellees.

■ His position is that the delivery by appellees of the two policies to their agent Oelsner manifests the acceptance by appellees of appellant's offer to enter into a contract with some insurance company or insurance companies during the latter part of March 1947. Assuming that the terms of appellant's alleged offer were sufficiently definite to warrant acceptance, still delivery of the policies by appellees *to their own agent* does not give rise to a binding contract. See, Restatement of Contracts, § 64, Illustration 2 (1932). It is conceded that

no acceptance of appellees' alleged offer was communicated to appellant or any person acting in his behalf until after the fire, at which time the offer was incapable of acceptance. Crawford v. Transatlantic Fire Insurance Co., 125 Cal. 609, 58 P. 177. This situation distinguishes Hill v. Industrial Accident Commission, 1935, 10 Cal. App.2d 178, 51 P.2d 1126, on which appellant relies. In that case the agent of the insurance company orally communicated the acceptance to the assured, and the issue before the California court was the effective date of the written contract under the California statutes.

■ Appellant argues that by his acceptance of the policies when ultimately delivered to him by Oelsner, and paying premiums thereon, he "ratified" the policies. This contention is without merit. Appellant could not "ratify" the acts of one not acting, or purporting to act, in his behalf.[1]

■ It is also claimed that appellees are "estopped" to deny that the policies were valid contracts, because appellees collected premiums (a refund of which was later tendered) from appellant after the date of the fire. In support of this contention appellant cites Hill v. Industrial Accident Commission, 10 Cal.App.2d 178, 51 P.2d 1126. That case does not hold that a contract of insurance arises by estoppel, but does say that the collection of premiums is evidence of the insurer's intention to be bound on the policy. In the instant case, if it can be said that appellees evidenced an intention to be bound on the policies, that manifestation in itself does not constitute a contract. No contract was consummated prior to the fire, since appellant was not aware of the proposed essential terms. No contract was consummated after the fire because the subject-matter had been destroyed.

Having tendered a return of the premiums, appellees are not asserting an inconsistent position. They have not led appellant to rely, to his detriment, on misrepresentation.

Appellant suggested in oral argument that he as a "third party beneficiary" could enforce a contract between appellees and National. Such a contention is inconsistent with his position that the insurance policies issued by appellees were obtained by Oelsner pursuant to appellant's alleged request for additional coverage. By taking this position appellant necessarily adopts appellees' contention that the policies were obtained pursuant to National's alleged request to "get off the hook." The facts, argue appellant, spell out two contracts between National, on the one hand, and each of the appellees, on the other, National offering to divert some part of the premiums to appellees and appellees promising in return to insure appellant.

The terms of the release signed by appellant, on receiving $101,766.95 from National, explicitly negative the assertion that appellant was settling only 87½% of National's liability. The release provides in part: "It is intended hereby to fully compromise and settle all claims and demands of every nature whatsoever of the undersigned against National Fire Insurance Company of Hartford, arising or to arise out of or under said policy of insurance or otherwise by reason of said fire or otherwise or at all * * *", and further: "It is agreed: * * * the undersigned does hereby fully release, acquit and discharge National * * * from any and all liability for loss by fire * * * including any and all liability under the said policy of insurance or otherwise * * *" National was liable to appellant for 100% of the loss, subject to conditions of the policy, and this liability has been fully satisfied.

■ The record contains an affidavit by appellant in support of his contention that only 87½% of National's liability was settled, leaving appellant free to pursue appellees for the other 12½% of the loss. Appellant asserts that it was agreed be-

---

1. See, Restatement of Agency, 1933, § 85 (1), and California Annotations thereto, especially Ellison v. Jackson Water Com- pany, 1859, 12 Cal. 542; Watkins v. Clemmer, 1933, 129 Cal.App. 567, 19 P.2d 303.

tween appellant and National at that time that the settlement would not affect any liability of appellees to appellant. The "parol evidence rule," renders this testimony incompetent. This rule is strictly adhered to in California.[2] Under California law, appellant, by executing the release to National, must be deemed to have settled the entire liability of that company which was 100% of the loss and appellant, therefore, lacks standing as a "creditor-beneficiary" to enforce National's alleged contracts with appellees.[3]

Judgment affirmed.

2. See, Calif. Civil Code, § 1625, and annotations thereto; Calif. Code of Civil Procedure, § 1856, and annotations thereto; and cases collected in the California Annotations to the Restatement of Contracts § 237.

3. See, Restatement of Contracts, § 141 (1); 2 Williston on Contracts, § 393, at n. 3 (1936); Anderson v. Calaveras Central Mining Corp., 1936, 13 Cal.App.2d 338, 57 P.2d 560.