[Civ. No. 18191. Second Dist., Div. Three. Aug. 31, 1951.]

JOHN DICK, Respondent, v. LEIGH WOOLSON et al., Appellants.

Nathan Newby, Jr., and Nathan Newby for Appellants.

W. C. Schaper and Glenn Simpson for Respondent.

SHINN, P. J. — From a money judgment for plaintiff rendered after trial to the court, defendants Builders Supply Corporation and Corporation Management, Inc., appeal. The judgment was for the balance due on a contract for sale of a business by plaintiff to defendant Woolson. The corporate defendants are successive assignees of Woolson of the sales contract and plaintiff sues as third party beneficiary of the assignments by which the corporations assumed Woolson's obligation.

The business transactions to be reviewed were involved, and the evidence wandered far from the issues to be tried. The principal facts are that plaintiff Dick and defendant Woolson entered into an agreement whereby, for a consideration of $25,000, Dick sold to Woolson a going business, The Home Improvement Company. The payment terms were $5,000 on the signing of the agreement, an additional $5,000 within 90 days, and the remaining $15,000 in equal monthly installments of $1,000 or more beginning September 1, 1947. Woolson agreed to form a corporation which would give a note to Dick for the balance due on the contract and would be jointly liable with Woolson on the contract. On May 31, 1947, Woolson assigned the sales contract to defendant Corporation Management, Inc., which assumed all the liabilities and obligations under the contract. On June 4, 1947, Corporation Management assigned the sales contract to defendant Builders Supply Corporation, which assumed the contractual liabilities and obligations. (The corporate defendants will be referred to as Management and Builders.) Both corporations were formed just prior to taking the assignments

and after the two assignments Builders' major asset was the Home Improvement Company and Management's major asset was the common stock of Builders. At this point in the transaction, if the sales contract was still operative and there had been no rescission of the assignment contracts, plaintiff was a creditor under the contract with Woolson, was creditor-beneficiary under a contract between Woolson and Management, and a creditor-beneficiary under the contract between Management and Builders. In August, 1947, plaintiff received from Builders the second $5,000 payment together with a promissory note for $15,297.22, the balance due on the contract, plus interest from May 1st. As provided in the contract, Builders made additional payments on September 1 and October 1, 1947. These payments were made even though the note was not due until November, 1948. Plaintiff received no other payments and brought this action against Woolson and Builders on March 18, 1948, claiming the accrued payments due under the contract plus interest. On November 23, 1948, the complaint was amended to include Management as a defendant and to add a cause of action on the note against Builders, and further to change the amount claimed to the full contract price which was by that time past due.

Judgment was granted against all three defendants for the balance due plus interest at 5 per cent and defendants' motion for a new trial was denied. Defendant Woolson did not appear at the trial and is not here appealing. Defendant Builders no longer owns the assets forming the subject matter of the sales contract, having reassigned them to Management in December, 1947. Builders was shown to be insolvent.

Defendants' contentions on appeal are: (1) Builders' note given to plaintiff discharged its liability under the sales contract; (2) Builders can be sued on the note only after maturity and as this action was brought before maturity it should be dismissed; (3) even if the note did not discharge the sales contract, Management rescinded its assignment from Woolson and plaintiff cannot sue as beneficiary of a nonexistent contract; (4) Management was induced to accept the assignment by Woolson's fraud. These contentions will be considered in order.

█ In order for the note to operate as payment of the sales contract it was necessary to show that it was so accepted by plaintiff. █ There was no evidence that plaintiff so treated the note. This conclusion is fortified by the terms of the sales contract under which the note was to be given as

"collateral to and coincident with liability on the contract." The further fact that Builders proceeded to make payments under the contract even after the note was given is inconsistent with the contention that the note discharged the sales contract. ■ The sales contract was outstanding and if Builders had not rescinded the assignment to it before plaintiff accepted the benefit of the assignment, Builders was clearly liable to plaintiff on a creditor-beneficiary theory.

■ The judgment against Builders was, as appellants state, "based exclusively upon its assumption on June 4, 1947, of the obligations of the contract dated May 1, 1947." If, therefore, liability under the contract was established, it is immaterial whether the action on the note was premature.

■ As regards Management, the contention is that the note discharged its liability on its acceptance of the assignment. The contract provided that a corporation was to be formed, that it would issue a note to plaintiff for the balance due, and that the "note [would] be collateral to and coincident with the obligations of [Woolson]." Management's argument is that the sales contract clearly shows the only obligation of the corporation would be on the note since it would be "collateral" to Woolson's obligation on the sales contract. This might have been true had there been no independent assumption by the corporation of the contract obligations. The basis of the action against Management is that it assumed Woolson's obligation and is thus liable to plaintiff, the creditor-beneficiary of the assumption contract. As indicated above, Woolson was not discharged on the contract by plaintiff's acceptance of the note; neither was his assignee of the contract discharged.

The principal question on the appeal is that raised by contentions three and four—as to the nature of the liability to a third party beneficiary. ■ A person not a party to a contract may still sue for its enforcement where it is made expressly for his benefit and has not been rescinded. (Civ. Code, § 1559.) ■ Where the obligations of a contract are assumed, the creditor under the original contract may sue the assuming party on the theory that he is an express beneficiary of the assumption contract. ■ The creditor may join both the assuming party and the original debtor. (*Anderson* v. *Calaveras Cent. Min. Corp.*, 13 Cal.App.2d 338, 343-344 [57 P.2d 560].) ■ However, until the creditor-beneficiary has accepted the benefit or has detrimentally acted in reliance thereon, the assuming party may rescind.

■ But as long as the assuming promisor continues to retain the consideration from the original promisee, the contract for the benefit of the third party cannot be rescinded or revoked. (*Pitzer* v. *Wedel,* 73 Cal.App.2d 86 [165 P.2d 971] ; *Pearsall* v. *Townsend,* 7 Cal.App.2d 162 [45 P.2d 824].)

■ Management concedes that when it assumed the obligations of the sales contract from Woolson on May 31, 1947, plaintiff became a third party beneficiary, but contends that this assumption contract was rescinded by it. If true, this would relieve Management of liability to plaintiff. At the trial, Management advanced the claim that the assignment of June 4, 1947, from Management to Builders, operated as a rescission by Management and a new assignment from Woolson to Builders. This contention was substantially disproved by the terms of the contract of assignment dated June 4, 1947, which was an express assignment by Management to Builders in clear and unambiguous terms. The contract may not be construed as a rescission of the Woolson-Management agreement. It is completely inconsistent with any theory of rescission. There is no basis for the contention that it did not embody the agreement of the parties. There was no other evidence in the record as to rescission. Nothing was ever restored to Woolson.

■ Management's remaining theory is that it was induced to accept the assignment by the fraud of Woolson. The transcript references given do not bear out the claim that evidence of fraud was offered and excluded. But if such evidence was offered it should have been excluded. Neither Management nor Builders ever restored the subject property, or any part of it to Woolson. There was no rescission. Such of the property as Builders acquired and had not disposed of was transferred to and retained by Management, leaving Builders insolvent. It was not claimed that plaintiff was a party to Woolson's alleged fraud. Manifestly, Management or Builders, as assignees of Woolson, would have no right to retain the property purchased without paying plaintiff the agreed price. Validity of the Dick-Woolson contract was never questioned.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied September 18, 1951, and appellants' petition for a hearing by the Supreme Court was denied October 29, 1951.