**Jacques ARLEY and Charlotte Arley, husband and wife, Appellants,**

v.

**UNITED PACIFIC INSURANCE COMPANY, a Washington corporation, Appellee.**

No. 20099.

United States Court of Appeals
Ninth Circuit.

June 9, 1967.

Rehearing Denied Aug. 1, 1967.

Charlotte Hunter Arley, Seattle, Wash., for appellants.

Mautz, Souther, Spaulding, Kinsey & Williamson, Kenneth E. Roberts, Rockne Gill, Portland, Or., for appellee.

Before MERRILL and KOELSCH, Circuit Judges, and BOWEN, District Judge.

KOELSCH, Circuit Judge.

On March 1, 1963, United Pacific Insurance Company issued to Jacques and Charlotte Arley, husband and wife, its standard three year policy of fire insurance covering two buildings located on the Arley's property in Nevada. The policy had been ordered by one Roger Chaney on January 17, 1963, but at his request was back dated to make coverage commence January 12, 1963.

A dispute over the validity of the policy arose between United and the Arleys because on January 15, three days after the effective date of the policy but two days prior to Chaney's order, one of the buildings had been extensively damaged by fire.

When no agreement was reached, United (hereinafter plaintiff) commenced this suit in the United States District Court for the District of Oregon seeking rescission of its policy. The Arleys (hereinafter the defendants) moved for summary judgment and for

dismissal of the action, but these motions were denied. They then commenced in Nevada a suit for a money judgment on the policy and moved the court to transfer this suit to Nevada or to stay proceedings pending the outcome of the litigation there. The court refused to do so and additionally advised defendants that their claim against plaintiff ought to be presented to and determined in the same forum as plaintiff's and that they, the defendants, ought to file a counterclaim. Apparently they declined. However, in the pretrial order, amongst the defendants' contentions, appears a complete and detailed statement of their counterclaim coupled with a demand for jury trial in the event "defendants are compelled by this court to file a counterclaim."

The cause was tried to a jury on the segregated issue of plaintiff's liability. The verdict being for plaintiff, the court entered judgment cancelling the policy and dismissing the counterclaim. We affirm.

 Defendants have assigned thirty-nine errors. This in itself is of little moment, although it would seem an unduly extravagant multiplication of assignments in a case having a record of only 367 pages. But we do find fault with the manner in which the asserted errors are presented. Defendants, in their briefs, collect them into several principal groups and argue them together. This practice is not unusual, of course, and generally is helpful to a reviewing court. But here the defendants have grouped together components having nothing in common and oftentimes relevant (if at all) to a main subject other than the one being argued. As a result, we have been confronted with a veritable jig-saw puzzle.[1]

---

1. To illustrate: Defendants' first specification of error reads:
 "1. The court erred in denying appellants' motion to dismiss for improper venue (R.8,14)." The only mention of venue made in the argument portion of the brief is this cryptic reference on page 37 of the opening brief:
 "*Venue:*
 Tr. 81 [a wrong citation]
 Commonwealth v. Rutherfoord [160 Va. 524], 169 S.E. 909, 90 A.L.R. 348
 McGrath v. Zander, [85 U.S.App. D.C. 334] 179 [177] F.2d 649 (Dist.Col.1949)" [a wrong citation]
 but even this intelligence is contained under main heading III entitled "Did the method of trial deprive appellants of their constitutional right to trial by jury" and this heading is stated to be "Directed to Specification of Error Nos. 5, 6, 7, 9, 13, 14a." The only one of these enumerated specifications that could remotely bear on venue is No. 5 which in terms is "The court erred in denying appellants' motion to stay proceedings or in the alternative to transfer to Nevada. (R.36–39, 41, 42)."
 A painstaking search of the record reveals that defendants made two venue motions:
 A. Shortly after the action was commenced appellants moved its dismissal for "improper venue." Such a motion is recognized by Rule 12(b)(3). But if we presume from the meagre "argument" in the brief that the motion was grounded on 28 U.S.C. § 1406(a), which provides for dismissal (or transfer) if the suit is laid in the wrong district, it was nevertheless rightly overruled. The record clearly shows the defendants maintained their home and were living in Portland, Oregon, where this action was commenced. Granting that defendants' supporting affidavits showed them to be citizens of Nevada, that fact was immaterial for the venue statute appropriate to this case (28 U.S.C. § 1391(a)) provides that where jurisdiction is founded only on diversity of citizenship—as this one was—venue shall be laid only in the district where all defendants reside. The statutory criterion is residence, not citizenship. The terms are not synonymous. Townsend v. Bucyrus-Erie Co., 144 F.2d 106 (10th Cir. 1944).
 B. After the case was at issue the defendants then made a second venue motion by which they sought to have the case transferred to Nevada as a more convenient forum for trial. If we assume this matter was the subject of the specification, the motion was then rested upon 28 U.S.C. § 1404(a) and of course was committed to the discretion of the trial judge. Clear-

■ Defendants vigorously contend the district court erred in denying motions (grounded upon an asserted lack of equity in plaintiff's complaint) to dismiss the action and for summary judgment. They rely upon the well settled rule announced in cases such as Di Giovanni v. Camden Fire Insurance Association, 296 U.S. 64, 68, 56 S.Ct. 1, 80 L.Ed. 47 (1935) and Massachusetts Bonding & Insurance Co. v. Anderegg, 83 F.2d 622, 623 (9th Cir. 1936), cert. denied, 299 U.S. 567, 57 S.Ct. 30, 81 L.Ed. 418 (1936) that when, as here, the loss has already occurred, a court of equity will generally not entertain a suit by an insurer to rescind the insurance contract but will leave the matter to a court of law where an adequate remedy exists.

But in the circumstances of this case, the point is really of academic interest only. For after making the rulings and before trial the district court plainly advised the defendants that the claim would be treated as one for a declaratory judgment and that pursuant to their demand, reflected in the pretrial order, the issue of liability would be submitted to a jury for determination. This was done.[2]

Defendants made a related contention that the district court committed error by treating the plaintiff's action as one for a declaratory judgment. Their reasoning is far from clear; they assert variously in both opening and reply briefs that "the trial court could not enlarge its jurisdiction by treating appellee's amended complaint as a petition for declaratory judgment." None of the cases cited by defendants is remotely in point or in any way supports them. Typical is Commercial Casualty Ins. Co. v. Fowles, 154 F.2d 884, 165 A.L.R. 1068 (9th Cir. 1946). There it appeared that plaintiff's suit had been dismissed in the district court for lack of jurisdiction; specifically that the amount in controversy was insufficient to meet the monetary requirements necessary to vest the federal court with jurisdiction under the diversity statute. On appeal the argument was made that the Federal Declaratory Judgment Act, under which the suit was brought, afforded an additional ground for jurisdiction of the Federal District Courts. We held simply that the Act was remedial in character and afforded a new remedy; that it did not "enlarge" the federal jurisdiction and that such jurisdiction must independently exist.

■ Plaintiff's complaint and the pretrial order plainly showed the existence

---

ly, his decision was correct. The principal witnesses were all in Oregon, the transaction had taken place there, the case was ready for trial, and the rational conclusion was that neither the convenience of witnesses nor the ends of justice would be advanced by transferring the case elsewhere.

2. Confirmation, if such is needed, appears in the judgment. There, these statements appear:

"The above entitled cause came on regularly for trial in the above entitled Court on the 15th day of December, 1964, before a jury duly empaneled and sworn to try the matter at issue. Prior to the trial, the Court concluded that it should treat the claims on the validity of the insurance policy as an action for a declaratory judgment to adjudicate and declare the rights, if any, of the respective parties on the segregated issue of the validity of the policy and whether the same should be cancelled and rescinded as demanded by plaintiff." [Here are set out recitals of the trial and submission and return of the verdict].

"Whereupon, said verdict was duly received and the court adopting the verdict of the said jury and finding that justiciable controversy existed between plaintiff and defendants on the issue of the validity of the alleged insurance policy * * * and the cause having been submitted to said jury as an action at law, rather than as a suit in equity, and being now fully advised in the premises,

Based on said verdict of the jury, IT IS ORDERED. * * * *"

We note that the court added that if on appeal we should decide the case ought to have been tried as one in equity then the court was in agreement with the verdict and would adopt it.

of a justiciable controversy and hence a matter appropriate to settlement by declaratory judgment. True, plaintiff prayed for rescission, but this did not impair the court's power, indeed its duty, to render such judgment as on the entire record the law required to finally determine the litigation. The principle, long since settled in federal courts, is embodied in the statement in Rule 54(c) that "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

Contrary to the defendants' contention, the verdict is supported by substantial evidence. Thus the record contains proof to the effect that in 1958 the defendants (who were then living in Portland, Oregon) purchased from Chaney, a local insurance agent, a policy of fire insurance covering the Nevada buildings. That policy was written by the Standard Accident Insurance Company. Late in 1960 and shortly before Chaney joined the Larry C. Nelson Agency in Portland as an insurance solicitor, the policy was cancelled, thus leaving the defendants without insurance on the property.

In the summer of 1962, Mrs. Arley requested Chaney to once again place fire insurance on the Nevada property. Chaney assured her that he would take care of it but, because neither he nor the Nelson Agency had a nonresident Nevada license, he "would have to see what else [he] could do because it would probably have to be brokered or [he] would have to take out another license."[3]

Chaney made no attempt to take out another license. Instead, during the summer of 1962, he approached several licensed agents with the proposal that one of them procure the policy.[4] Although he was unsuccessful he repeatedly reassured Mrs. Arley that he was diligently pursuing the matter. On October 30, 1962, he "guaranteed" that he would obtain insurance. On that date, and again in December 1962, he made statements to the effect that "you are covered."

On January 16, 1963, the day after the fire, Mrs. Arley notified Chaney of the loss. The following day, January 17, Chaney for the first time asked plaintiff to issue the policy. He did not inform plaintiff that the property had already been damaged; rather, he requested that the policy be back-dated to January 12, 1963. Plaintiff did not learn of the fire until after the policy had been issued.

On this evidence the jury was entitled to conclude, as plaintiff contended, that throughout this period Chaney was acting as a broker for defendants and not as agent for the plaintiff.[5] In that relationship his statements to the defendants would neither bind nor obligate plaintiff as the insurer of the defendants' property. And absent a valid binder prior to the fire, no contract of insurance would exist. For if Chaney was acting on behalf of the defendants when he submitted the application on January 17, 1963, the policy was voidable at the election of plaintiff

---

3. Chaney did not need such a license to cover out-of-state risks. As United's agent, he could at any time have orally bound United as insurer. The problem was that without such a license he would have lost his commission for, under Nevada law, an insurance underwriter may pay a commission only to a nonresident agent who possesses a Nevada license.

4. The inference is permissible and indeed strong that he hoped one of them would "split" this commission with Chaney.

5. An insurance broker, as distinguished from an agent, does not represent an insurance company but places insurance with whatever company he can induce to insure the risk. He is not the agent of the insurer, but rather the agent of the one seeking insurance.

by reason of Chaney's fraudulent non-disclosure. Similarly, even if on January 17, Chaney was acting as plaintiff's agent, the policy was likewise voidable because at that time it was beyond his authority as such agent to commit his company to the insurance of the risk for the property was already damaged. See Gandelman v. Mercantile Insurance Co., 90 F.Supp. 472, 476 (S.D.Cal.1950), aff'd, 187 F.2d 654 (9th Cir. 1951), cert. denied, 342 U.S. 896, 72 S.Ct. 228, 96 L.Ed. 671 (1951); cf. Royal Insurance Co. v. Smith, 77 F.2d 157, 159 (9th Cir. 1935), cert. denied, 303 U.S. 656, 58 S.Ct. 759, 82 L.Ed. 1115 (1938). See generally 16 Appleman, Insurance Law and Practice § 9163, at 703 (1944).

Defendants urge that as a matter of Oregon law Chaney was not their broker; rather he must be deemed the agent of plaintiff, the insurer.[6]

They trace the progression of the Oregon insurance laws from their inception noting that the original insurance act defined a broker but that the laws were amended and superseded so that presently the sole provision for brokers of any kind is for nonresident brokers. They also call attention to the fact that during this same transitional period the term "agent" received legislative attention; that although defined initially as one who solicited insurance and acted as a middleman to place insurance the present statute defines "agent" as a person lawfully authorized to act as representative of the insurer in negotiating and effecting contracts of insurance; and additionally they point out several presently existing statutes providing for insurance solicitors and defining them in substance as agents' agents.

■ Defendants then invoke the well settled aid to statutory construction that the mention of one thing implies the exclusion of another (*expressio unius est exclusio alterius*) and conclude

that, since there is presently no provision for brokers or for licensing brokers except those who are nonresident, and that a solicitor is made a subagent of the insurance company whom the agent represents, that the legislative intent was to prohibit persons from being brokers (except those out-of-state licensed brokers) and to constitute them agents of the insurer. Such a construction is not permissible. The statutes are clearly regulatory, not prohibitory in nature. They uniformly provide for and require licensing. The most that can be concluded is that resident brokers need not be licensed.

■ There is an additional reason why the argument is unsound. Where two constructions are permissible, one of which would invalidate and the other save a statute, the latter will be placed upon it. Given the construction urged by defendants, grave doubts regarding the constitutional validity of the statute would exist. Under the statute as so construed, the State would permit a person residing beyond its territorial limits to carry on a business within its boundaries, but at the same time forbid its own citizens to do so. Absent some acceptable basis for classifying citizens differently than non-citizens, and we can see none, the discrimination would appear to be arbitrary.

■ Even if one of the instructions given by the court was erroneous in that it required specific proof of a fact in issue and did not allow the fact to be the subject of inference, defendants are in a poor position to complain; it appears that they requested an instruction in all essential respects the same, including the portion criticized, as the one given. A litigant may not simultaneously assign as error both the giving and failure to give the same instruction.

■ We have thoughtfully examined the several remaining assignments, but

---

6. As defendants' counsel stated: "There is no such animal as a broker under the statutes of Oregon."

conclude they are so wholly lacking in merit that their discussion would serve only to unduly lengthen this opinion.[7]

The judgment is affirmed.

7. For example: Defendants assert that plaintiff was precluded by estoppel and waiver from questioning Chaney's authority as its agent by reason of a letter plaintiff sent to them shortly after the policy was issued. Defendants urge that this letter states as the sole ground for denying liability the defendants' asserted fraudulent non-disclosure of the loss prior to the application for the policy. However, the letter is not susceptible of such a limited construction; there was no basis to invoke the waiver doctrine because at the time the letter was written the defendants had not yet asserted that they were covered by an oral binder from Chaney; and no prejudice could result because any rights and obligations of the parties had already accrued.