No. 17,359.

ARGYS ET AL. *v.* McGLOTHLEN ET AL.

(276 P. [2d] 983)

Decided November 22, 1954.   Rehearing denied December 13, 1954.

Mr. JOHN M. BOYLE, Mr. MACK WITTY, for plaintiffs in error.

Mr. WILLIAM S. RUSH, Mr. JOHN STUMP WITCHER, for defendants in error Cowan and Brooks.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

GEORGE E. COWAN conducted a business known as Cowan Coal and Feed Yard; he departed this life in

October, 1944, and pursuant to the laws of descent and distribution his estate passed to his wife, Dorothy Cowan, and his daughter, Patricia Brooks. In December, 1946, his wife filed with the county clerk and recorder an affidavit concerning the ownership of the business operated under the trade name of Cowan Coal and Feed Yard and designated herself and Patricia Brooks as sole owners of said business.

On January 7, 1947, Mrs. Cowan and her daughter, Mrs. Brooks, entered into an agreement with F. D. McGlothlen, which agreement recited that the Cowan heirs were the owners of certain real estate, motor vehicles and equipment, together with P.U.C. certificates of conveyance and necessity and certain merchandise and personal property which comprised the physical property of the Cowan Coal and Feed Yard and which they agreed to sell and McGlothlen agreed to purchase pursuant to the terms of the agreement. This agreement further provided that the title to all the business, trucks, trailers, equipment and P.U.C. certificates should remain in the name of Cowan Coal and Feed Yard; McGlothlen agreed that he would keep all equipment in good order and repair; that any new equipment by him purchased would become the property of the Cowan Coal and Feed Yard. McGlothlen agreed that he would save the widow and daughter harmless on account of any obligations by him incurred in connection with the operation of the business. Mrs. Cowan and her daughter agreed that when the purchase price had been paid in full they would make and deliver all instruments or documents necessary to convey title to all of the property embraced in the contract to McGlothlen. This contract was recorded June 25, 1948.

Pursuant to the agreement, McGlothlen went into possession of the property; he conducted the business until the month of December, 1950. In that month Patricia Brooks advised McGlothlen that by reason of his failure to make certain payments under the contract,

she, on behalf of her mother and herself, would have to take the business over and repossess the property. There is evidence in the record that Mrs. Brooks told McGlothlen, at the time of the repossession, that as he did not have any cash assets she would take over the accounts receivable, collect the same and pay the outstanding bills. At that time there were some seven thousand dollars worth of outstanding accounts. McGlothlen surrendered possession; turned over the accounts receivable; signed a statement on his purchase contract with Mrs. Cowan and Mrs. Brooks reciting: "I hereby surrender my rights under this contract." Thereafter he made no attempt to collect any of the accounts receivable.

In July, 1952, plaintiffs in error, hereinafter referred to as plaintiffs, instituted an action against "F. D. McGlothlen, Dorothy Cowan and Muriel Patricia Brooks, doing business as Cowan Coal and Feed Yard," alleging defendants owed plaintiffs $1,426.96 for goods sold and delivered to defendants between January 9, A. D. 1950 and January 11, A. D. 1951. They demanded judgment for this amount. Defendant McGlothlen, though served with process, failed to appear and default judgment was entered against him. Mrs. Cowan and Mrs. Brooks filed an answer denying they were engaged in business with McGlothlen; denied they ever contracted for the purchase of any of the material or labor for which plaintiffs sought recovery; set forth they sold the business to McGlothlen in January, 1947; that he operated it as his own; that any obligations by McGlothlen created were without the knowledge of the answering defendants, and denied any liability to plaintiffs.

It appears from the record that in December, 1952, one of counsel for Mrs. Cowan and Mrs. Brooks paid plaintiffs the sum of $600.00. This six hundred dollar payment represented the purchase price of certain tires and tubes purchased by McGlothlen. When these items were repossessed they were practically new and Mrs.

Cowan and Mrs. Brooks paid for them because, as they said, they were used in their operation of the business. This left a claimed balance of $641.45 for which plaintiffs on the trial sought recovery against all defendants. Defendants Cowan and Brooks on the trial admitted liability in the sum of $185.47 for merchandise by them purchased after McGlothlen surrendered possession.

Trial was to the court and resulted in a finding against Mrs. Cowan and Mrs. Brooks in the sum of $185.47 (the amount they admitted to be due) and against McGlothlen in the sum of $641.45. Upon these findings judgment was entered and plaintiffs bring the cause here by writ of error, contending that Mrs. Cowan and Mrs. Brooks are equally liable with McGlothlen for the balance of the account.

When McGlothlen surrendered the property and cancelled the agreement between himself and the defendants Cowan and Brooks, these accounts were his property and were not embraced in the contract of purchase and sale.

The liability, if any, of the defendants Cowan and Brooks must be predicated upon the obligation assumed when they took over the accounts receivable and agreed to make payment of the debts incurred while McGlothlen operated the business. Liability of defendants in error under the bulk sales law is not here urged and accordingly is not considered.

Referring to the testimony offered by plaintiffs concerning the "agreement to pay the bills" of McGlothlen outstanding at the time Mrs. Brooks took over the property embraced in the contract of purchase and sale of the accounts receivable, the trial court stated: "Now, that was after the accounts were contracted; they were due; they were a liability to somebody. But the court doesn't consider that as an obligation to pay these debts. No consideration for it that I can see. It was a voluntary statement, in any event. And I don't think that it

is binding upon this defendant even though she has said positively that she would pay."

F. D. McGlothlen when called as an adverse witness, testified as follows: "Well, Mrs. Brooks, came to me and told me that she would have to take it over. And she said, since you don't have the money, are in no position to pay the bills, that she would take over the books or accounts receivable and collect the accounts receivable and pay the bills."

The witness, Melville C. Kaess, fixed the date of his conversation with Mrs. Brooks as the first or second day after she took over possession from McGlothlen. He testified as follows: "I walked in and Mrs. Brooks was there, and I asked where Speed was, and she said that she had taken over the business. And I said he had an old account with me, and I wanted to see about collecting my account. And she told me at that time that she was taking over the business and was going to collect all the accounts receivable and pay all the bills just as soon as she could. And I possibly had asked her three or four times in the matter of a week or so, and each time she told me the same thing, that she was paying on them as fast as she could." We quote from the examination of defendant Brooks: "Q. Didn't you tell McGlothlen at that time you would accept the accounts receivable, collect those and pay all the outstanding bills? Did you or did you not tell him that at that time? A. I did."

There is ample evidence in this record of a consideration for the agreement testified to by witnesses and admitted by Mrs. Brooks that she and Mrs. Cowan would pay the outstanding accounts in consideration of the turning over to them of the accounts receivable. Under our holdings in *Cooper v. Cooper,* 112 Colo. 140, 146 P. (2d) 986, and *Troutman v. Webster,* 82 Colo. 93, 257 Pac. 262, the trial court erred in holding there was no consideration for the agreement on the part of defendants

Cowan and Brooks. We have held that where the promise to pay the debt of another is in consideration of property or funds received from the debtor for the express purpose of paying the debt, such an oral promise is not within the statute of frauds. In *Burson v. Bogart,* 49 Colo. 410, 113 Pac. 516, Mr. Chief Justice Campbell said: "Upon such a promise, not only the debtor himself, but the creditor, may sue, even though it is made to the debtor alone." See, also, *United States Mining Corporation v. Goble,* 82 Colo. 59, 256 Pac. 1091.

█ Where, as here, the person who agrees to sell and convey property connected with the operation of a business, provided the purchaser makes a stipulated payment, and where the seller repossesses the property on account of default, and at the same time takes over the accounts receivable connected with said business, informing the purchaser that she will collect the bills and pay the debts connected with the purchaser's operation of the business, her obligation to pay the debts is fixed and determined and may be enforced at the instance of a creditor of the purchaser. In the instant case, under the record as we view it, had defendants Cowan and Brooks collected an amount in excess of the business debts which McGlothlen owed, they would without question have been entitled to retain as their own property any excess realized on the collections over and above the amount of the debts. This being so, they assumed the obligation to pay the debts even though the collections might not equal the amount of the indebtedness which they agreed to discharge.

The cause is remanded to the trial court with direction to enter judgment in favor of plaintiffs in error and against defendants in error Cowan and Brooks for $641.45, together with interest from December 7, 1950, and costs.