[Civ. No. 15960.   First Dist., Div. One.   Nov. 29, 1955.]

NORMAN B. GRIFFIN, Appellant, v. VICTOR L. WILLIAMSON et al., Respondents.

A. Don Duncan for Appellant.

George W. Hippeli for Respondents.

WOOD (Fred B.), J.—Plaintiff Norman B. Griffin brought this action against Edwina W. and William Compere and Victor L. and Gratia Williamson for the remainder due upon a promissory note of the Comperes after foreclosure of the chattel mortgage which the Comperes had given to secure the note.

The note, made in the principal sum of $27,500, evidenced the balance due to plaintiff for the purchase of his cleaning business. There is no question as to the liability of the Comperes. They raised no issue of fact at the trial. Plaintiff sought to hold the Williamsons liable as partners of the Comperes; i.e., as persons who were partners at the time of the transaction in suit or who, subsequently becoming partners, became obligated to pay.

The jury's verdict was in favor of the Williamsons and against the plaintiff. In response to special interrogatories, the jury also found: (1) the first written articles of partnership between the Williamsons and the Comperes were signed and executed "July 31st, retroactive to May 3, 1947"; (2) before these first written articles of partnership were signed and executed no partnership by oral agreement existed between the Williamsons and the Comperes; (3) after the partnership was entered into the Williamsons assumed the obligation evidence by the note sued upon, "qualified to the extent the obligation was rescinded"; (4) the Williamsons are not now liable to the plaintiff for the indebtedness so assumed.

Plaintiff has appealed from that portion of the judgment which was in favor of the Williamsons; also, from an order which denied his motion for an order vacating the judgment as to the Williamsons and directing judgment in his favor against the Williamsons. In support of his appeal, plaintiff presents some 40 specific points under not less than 20 independent headings. We have considered each of these points and find they do not present a basis for reversal of the judgment. To discuss them one by one in detail would draw this opinion out beyond all bounds and fail to serve the most useful purpose. Instead, we will narrate what of significance happened at the trial, indicate our approval or disapproval, and state our reasons why. An outline of the sequence of events will aid the discussion.

Plaintiff was the owner of the "Norman Cleaners," a business having as its assets two leases, fixtures, equipment and good will.

Not later than April 24, 1947, Mrs. Compere became obligated by contract to purchase this business upon certain terms including the making of a down payment of $10,000 and the execution by herself and husband of a $27,500 note in plaintiff's favor. On that day the Comperes executed the note and put it in escrow. In ordinary course the escrow probably would have been consummated by May 5th (Mrs. Compere took possession May 5th) but was not in fact consummated until May 21, 1947.[1]

On July 31, 1947, the Comperes and the Williamsons signed an agreement in writing to become and be partners in the conduct of this cleaning business, for a term "commencing with the date hereof and continuing until dissolved by mutual consent . . . or by operation of law," each of the Williamsons to have a 12½ per cent interest and each of the Comperes 37½ per cent, and designating Mrs. Compere as manager of the business. At the same time, Mrs. Compere executed and delivered to the partnership all of her right, title and interest in and to the business. Each of these two instruments was dated "this 3rd day of May, 1947."

---

[1] A few days before April 24, 1947, through E. W. Taylor, plaintiff orally agreed to sell the business to Mrs. Compere. The transaction, because Taylor had no broker's license, was handled as a sale from plaintiff to Taylor and from Taylor to Mrs. Compere.

Not later than April 24, 1947, Taylor as seller and Mrs. Compere as purchaser signed an agreement in writing (dated April 21, 1947) whereby he promised to sell the business and she promised to buy it upon certain terms and conditions which included a promise by the purchaser to make a $10,000 down payment and to give a promissory note in the sum of $27,500 payable at the rate of $500 per month with interest at 5½ per cent. This agreement also recited the payment of $500 by William George Compere and Edwina Compere and designated them as the purchaser.

On April 24, 1947, Taylor, Mrs. Compere and Griffin met at the office of the Bay Cities Escrow Company and opened two escrows, one relating to the sale from Griffin to Taylor, the other relating to the sale from Taylor to Compere. The Taylor-Compere escrow agreement, signed by Taylor and both Comperes, designated Taylor as vendor and Edwina Compere as vendee, incorporated the provisions of the April 21 agreement by declaring that "the herein escrow instructions are subject to the terms and conditions of a Uniform Agreement of Sale and Deposit Receipt *executed by the parties hereto*" (emphasis added) and stated that the note and a chattel mortgage securing its payment would be executed by William George Compere and Edwina Compere, his wife, in favor of Norman B. Griffin.

On the same day the Comperes signed the note and the chattel mortgage and placed them in escrow. Taylor put in escrow a bill of sale conveying the business to "Edwina Compere," a notice of intended sale, under the Bulk Sales Act, designating "Edwina Compere" as the vendee, and an assignment of lease to "Edwina Compere" which assignment was in writing accepted by her and approved by the lessors.

Later, by an agreement in writing dated October 13, 1947, the Comperes and the Williamsons effected certain changes in their partnership contract. Among other things, this agreement increased from 25 per cent to 50 per cent the interest of the Williamsons in the partnership and decreased that of the Comperes from 75 per cent to 50 per cent, provided for additional cash contributions by the Comperes and the Williamsons, respectively, recited that the Comperes had borrowed $27,500 from Norman B. Griffin evidenced by a promissory note of April 24, 1947, in the principal sum of $27,500 bearing interest at 5½ per cent per annum and declared that "for the purpose of equalizing the contributions to the capital of said partnership by all the partners hereto, the said Victor L. Williamson and Gratia Williamson hereby agree with the said William Compere and Edwina W. Compere that the said promissory note and the indebtedness thereby evidenced shall be considered as a partnership indebtedness and that the payment of all amounts due thereunder shall be a business expense, and the said Victor L. Williamson and Gratia Williamson hereby agree to pay to the said William Compere and Edwina W. Compere 50% of the amount of any judgment which may be recovered against them in any suit brought upon said promissory note."

By a writing dated March 3, 1948, executed by the Comperes and the Williamsons, they in terms expressly rescinded their agreement of October 13, 1947. After declaring the mutual desire of the parties that the October agreement be rescinded and the parties be restored to the position in the partnership which they held prior to the October agreement, the agreement of March 3, 1948, expressly declared the October agreement "is hereby cancelled and nullified"; that the Williamsons "hereby assign and transfer" to the Comperes "one-half of their 50% interest in said business, and that in consideration thereof" the Comperes "release" the Williamsons "from the obligation to pay one-half or any part of any judgment which may be obtained against them in connection with that certain note and chattel mortgage executed by said Comperes to Norman B. Griffin."

In connection with instructions to the effect that a partner is liable for all the obligations of the partnership arising after he becomes a member, the court told the jury that the Williamsons did not become liable on that basis if a partnership between them and the Comperes did not exist at the time of the execution of the note, which the court

declared was April 24, 1947, the day the note was signed. (Instructions 11, 13, 14 and 19).[2] Plaintiff complains of the date the court gave the jury, claiming that the consummation of the escrow (not earlier than May 5th) instead of its commencement (April 24th) was the critical date because delivery of the note, not its mere signing, marked the commencement of the obligation on the note and, assertedly, this is not a case for relation back to the commencement of the escrow. The trial court apparently viewed this as a case for relation back. Whether this is such a case, we need not decide. The true test here is the date when the obligation to buy the business and to pay the agreed purchase price was incurred, which, as we have seen, was April 24, 1947, the very date which the court gave the jury. The fact that the court described it as the time of the signing of the note instead of the effective date of the contract of purchase, is immaterial. Furthermore, the plaintiff requested and the court gave, with modifications, an instruction quite in harmony with the instructions which he now criticizes; "If you find that Victor L. Williamson and Gratia Williamson were copartners with William Compere and Edwina Compere when the *promissory note* ~~obligation~~ to plaintiff Norman B. Griffin ~~for the purchase of the business and its assets was incurred~~ *was executed,* you will render a verdict in favor of plaintiff against them for the balance due plaintiff." (Number 19 as given by the court, a modification of plaintiff's Number 29. Words deleted by the court are in strikeout; words added, in italics. Plaintiff says that by other instructions the court gave the jury clearly to understand that by "execution" of the note he meant its "signing," not its signing and delivery; hence, April 24th, not May 5th or May 21st.) This instruction as prepared and submitted by plaintiff, pointed to the very date which the court gave, April 24th, the date when the "obligation . . . for the purchase price of the business . . . was incurred."

The finding that no partnership by oral agreement existed between the Williamsons and the Comperes prior to the signing (July 31, 1947) of their first written articles of partnership, is amply supported by the evidence. That fact and the fact that the partners made their first articles effective

[2]We observe that the record fails to indicate the source of instructions 11 and 13 (whether requested by plaintiff or defendant or given on the court's own motion); hence, presumably requested by plaintiff-appellant and not subject to challenge by him upon appeal.

retroactively only to May 3, 1947,[3] means there was no partnership in existence when (April 24th) Mrs. Compere incurred the obligation to pay the purchase price, the remaining $27,500 portion of which was evidence by the note in suit.

Plaintiff contends that by participating in the formation of this partnership and in the acceptance of Mrs. Compere's transfer to the partnership of her "right, title and interest in and to the business . . . and . . . assets of said business," the Williamsons assumed the obligation evidence by the $27,500 note. He argues that this is like the case of a principal who, if he accepts the benefits of a contract his agent has made, must accept it with its burdens. There is no analogy. All that the Williamsons did was to form a partnership with the Comperes. In so doing and receiving and accepting certain properties the partners did not assume the personal obligations of the assignor.

Plaintiff invokes also the provisions of sections 1589 and

---

[3]Plaintiff complains of parol evidence that was admitted concerning the occasion, purpose and intent of the parties in preparing and executing the partnership agreement dated May 3, 1947.

We find no error in that, plaintiff being a stranger to that agreement. The parol evidence rule applies as "between the parties and their representative, or successors in interest" (Code Civ. Proc., § 1856) or "between the parties thereto, or their successors in interest by a subsequent title" (Code Civ. Proc., § 1962, subd. 2). Moreover, plaintiff can show no prejudice to his case, because the jury found in his favor when it found the agreement was effective retroactively as of May 3, 1947. Plaintiff contends that because in a certain other action Williamson assertedly made a claim to certain moneys "by reason of the partnership agreement . . . dated May 3, 1947" and because in another action he asserted through his attorneys that the property covered by the chattel mortgage was sold to Williamson "on April 24, 1947," he was *conclusively* bound by such declarations and they tended to prove the commencement of the partnership as of April 24th, or at least by May 3, 1947. It would appear that such statements were, at most, evidence in the case and merely conflicted with Williamson's testimony that there was no partnership created by oral agreement and no partnership agreement prior to the written agreement which was dated May 3, 1947.

Plaintiff complains that the court erroneously curtailed his examination of Williamson concerning a statement made by the latter upon deposition in another action wherein Williamson assertedly claimed that his title to and in to the property of the business dated back as early as sometime in April. Asked what he wished to prove, plaintiff's counsel said he wished to show that the witness was "estopped" to deny his partnership from the beginning, "by reason of the fact that he claims title to these assets of the partnership which were acquired at the beginning of the partnership in this suit." The court ruled that Williamson would not thereby be estopped to deny that he became a partner before he in fact did become a partner, and so informed the jury at the time. We see no error in that. Plaintiff's offer of proof set forth no element of estoppel, at most an out of court statement by Williamson inconsistent with his testimony in court. If plaintiff had the latter in mind he should have so informed the court.

3521 of the Civil Code. Here, too, the asserted analogy is lacking. There was no assignment or assumption of obligations. ██ ''The general rule is that the mere assignment of rights under an executory contract does not cast upon the assignee any of the personal liabilities imposed by the contract upon the assignor. (3 Cal.Jur. 281, § 33; *Lisenby* v. *Newton,* 120 Cal. 571 [52 P. 813, 65 Am.St.Rep. 203]; *Wilson* v. *Beazley,* 186 Cal. 437 [199 P. 772].) But the rule is, of course, otherwise in a case where the assignee obligates himself to perform the covenants binding upon his assignor.'' (*Barberich* v. *Pooshichian,* 59 Cal.App. 507, 510 [211 P. 236]. ██ See also *Armstrong Co.* v. *Shell Co. of Calif.,* 98 Cal. App. 769, 775-776 [277 P. 887].) '' 'A person becoming a member of an existing firm, or forming a partnership with another in the latter's existing business, does not thereby become liable for the debts already incurred, nor does the new firm become liable for them. An agreement, express or implied, is necessary to create such liability, not only between the creditors and the new firm but also as between the partners; that is to say, the presumption is against the assumption of such liability, and the burden to prove it is upon the one who asserts it. . . .' '' (*Wine Packing Corp. of Calif.* v. *Voss,* 37 Cal.App.2d 528, 533-534 [100 P.2d 325].) ██ In our case, at most, the partnership acquired the property subject to the lien of the chattel mortgage, there being nothing in the partnership agreement or in the assignment from Mrs. Compere indicative of an intent to assume an obligation of any kind.

██ Plaintiff advances still another theory for assumption of liability by the Williamsons, this time limited to partnership property. He directs attention to section 2411 of the Civil Code (Uniform Partnership Act, § 17; now Corp. Code, § 15017) which in 1947 provided that a person admitted as a partner ''into an existing partnership'' is liable for all the ''obligations of the partnership arising before his admission'' as though he had been a partner when such obligations were incurred ''except that this liability shall be satisfied only out of partnership property.'' There are authorities which indicate that these provisions are actually as well as literally limited to the case of a person who becomes a member of an existing partnership. (See *Wine Packing Corp. of Calif.* v. *Voss, supra,* 37 Cal.App.2d 528, and *Hargis* v. *Hargis,* 221 Ark. 654 [255 S.W.2d 663].) If that be the law, then section 2411 does not here apply for lack of evidence

that the Comperes operated as partners prior to the time they and the Williamsons became partners. In any case, the urge to apply section 2411 comes too late because the possible application of section 2411 to the Williamsons was no part of plaintiff's theory during the trial. The lack of such a theory is clearly indicated by the fact that plaintiff presented and requested one instruction based upon section 2411 in relation solely to other parties, not to the Williamsons. These other parties were defendants Carl Semonian and Harry Tarpinian, who entered this partnership in March, 1948, taking over the Compere's 75 per cent with the consent of the Williamsons.[4] This instruction concerning Semonian and Tarpinian concluded with the statement that "a person admitted as a partner into an existing partnership is liable for all the obligations of the partnership arising before his admission as though he had been a partner when such obligations were incurred," section 2411 being cited in its support. We note that even as a section 2411 instruction it was defective in omitting the very important limitation "except that this liability shall be satisfied only out of partnership property." In view of these circumstances, plaintiff is not now in a position to urge section 2411 as a basis for imposing liability upon the Williamsons.

Plaintiff correctly states that it was the October 13, 1947, agreement which the jurors had in mind when they found that after the partnership was entered into the Williamsons assumed the obligation evidenced by the note sued upon.[5] He advances certain theories as to the legal effect of that agreement, theories that are of significance chiefly in connection with the question whether the parties could and did rescind the October agreement.

One of these theories is that this agreement functioned as a ratification by the principal (the partnership and its members) of the act of its agent (Mrs. Compere) in acquiring the property and incurring the purchase price obligation. There inheres in this the same fallacy that we have men-

---

[4] The trial court directed a verdict in favor of Semonian and Tarpinian and plaintiff did not appeal from the portion of the judgment which was in their favor.

[5] Plaintiff claims it was error for the court to admit evidence of a conversation the parties had just before they prepared and executed the October 13th agreement and also error to submit to the jury the interpretation of the agreement. We are not convinced it was error, but even if it were the plaintiff has not been prejudiced because the jury found in his favor concerning the effect of the agreement, and the Williamsons have not appealed.

tioned in relation to the same theory in connection with the original articles of copartnership, the absence of the essential elements of principal and agent.

Another theory advanced by plaintiff is that the October, 1947, agreement had the effect of making the Williamsons the principal obligors and the Comperes mere sureties, to the extent at least of 50 per cent of the obligation, upon the asserted analogy of the situation which obtains when a new partnership succeeds an old one and assumes the obligations of the old, citing *Eastin* v. *Roberts, Carpenter & Co.,* 19 Cal.App.2d 567, 571 [66 P.2d 224]. Whether that doctrine applies here or not, we need not decide. Plaintiff's connection with the October agreement is that of third party beneficiary. In that capacity, he may enforce the contract of assumption "at any time before the parties thereto rescind it" (Civ. Code, § 1559). ■ Until the "creditor-beneficiary has accepted the benefit or has detrimentally acted in reliance thereon, the assuming party may rescind. But as long as the assuming promisor continues to retain the consideration from the original promisee, the contract for the benefit of the third party cannot be rescinded or revoked. (*Pitzer* v. *Wedel,* 73 Cal.App.2d 86 [165 P.2d 971] ; *Pearsall* v. *Townsend,* 7 Cal.App.2d 162 [45 P.2d 824].)" (*Dick* v. *Woolson,* 106 Cal.App.2d 415, 419-420 [235 P.2d 119].)

■ "Rescission," of course, denotes the return by the promissors (here, the Williamsons) to the promisees (the Comperes) of the consideration which the latter had given the former for the promise to assume the obligation. Here, that requirement was met. The Williamsons relinquished the additional 25 per cent interest in the partnership which they acquired by their assumption contract and transferred it back to the Comperes from whom they had received it.

■ Concerning the rescission contract[6] of March 3, 1948, plaintiff contends that its failure expressly to mention that

---

[6]Plaintiff assigns as error, in violation of the parol evidence rule, Williamson's testimony concerning a conversation he and Mrs. Compere had prior to the drafting and execution of this contract. That testimony merely showed the occasion for changing the partnership arrangement, including the fact that Mrs. Compere felt she should not continue to carry on with the management of the business and the fact that she and her husband were leaving California. That testimony did not purport to interpret the contract or vary its terms. The writing was so clearly a contract of rescission, the admission of the testimony could have done no possible harm.

Upon the ground that a written instrument presents questions of law for determination by the court only, plaintiff claims it was reversible

clause of the October agreement which declared that payment of the note would be a partnership expense, operated as a failure to rescind that clause. We do not so view it. The express rescission of the October agreement as a whole was adequate and effective without specifically listing and separately rescinding each and every clause it contained.

Plaintiff claims that the rescission came too late, that it came after plaintiff had accepted as a third party beneficiary. He predicates this claim upon the fact that on March 1, 1948, he filed an action against the Comperes and the Williamsons individually to collect the deficiency on the note. In so doing he was not accepting or enforcing the agreement of October 13th because he had not yet learned of its existence.

Plaintiff's principal remaining complaint is that the instructions which the court gave the jury concerning assumption by the Williamsons of obligations that had been created prior to the effective date of the partnership did not place before the jury plaintiff's various theories of liability. Irrespective of the question whether the evidence entitled him to instructions upon any of those theories, he is not in a position now to complain, for he failed to present them in appropriate form to the court. For example, plaintiff criticizes instructions 11 and 13 (which were to the effect that a partner is liable for all obligations incurred by a partnership after he becomes a partner and for such previously incurred obligations of the business as he assumes and agrees to pay) not on the ground that they were erroneous (they were correct as far as they went) but because they did not expound plaintiff's theories of assumption of the debt by way of estoppel, ratification of an agent's act by his principal, acceptance of the benefits of Mrs. Compere's assignment to the partnership, and Williamsons' out of court claims to ownership of the assets of the business. Those theories obviously had to do with the means, manner and method of assuming or incurring indebtedness. If plaintiff desired that the jury be particularly instructed in respect thereto he should have requested that the instructions which the court gave be made more specific or he should have asked for qualifying instructions. (See *Ornales* v. *Wigger*, 35 Cal.2d 474, 478-479 [218 P.2d 531] ; *Kuehn* v. *Lowthian*, 124 Cal.

---

error to submit to the jury the question whether or not the October agreement was rescinded. If there were only legal questions involved, no harm was done because the jury correctly viewed the 1948 agreement as one of rescission.

App.2d 867, 871-873 [269 P.2d 666].) Plaintiff says his instruction Number 10,[7] which the court denied, was on these subjects but he is mistaken. His Number 10 would have informed the jury concerning the power of a partner to act for his partnership but said nothing about estoppel, ratification, or any of the other theories mentioned. Plaintiff's requested instructions Numbers 8, 28, and 31 did touch upon those theories but each went too far and in effect would have, if given, directed a verdict in favor of the plaintiff. Number 8 declared that the Williamsons received as partners all the assets of the business and cannot be heard to deny that they must assume the balance of the purchase price. Number 28 stated ''as a matter of law'' that the Williamsons were partners when the obligation to pay the purchase price was incurred. Number 31 declared that the Williamsons could not rescind their agreement or assumption of liability because they had retained the consideration for their promise to pay the obligation to plaintiff, which consideration consisted of ''the assets of plaintiff's business, which he had sold to the partnership.'' Plaintiffs' Number 9 dealt with the character of proof required when a stranger asserts the existence of a partnership, but we are unable to consider and determine the propriety of this requested instruction because it appears from the record that ''this instruction also contained other material'' than that which is set forth in the record upon this appeal. Moreover, as noted earlier in this opinion, plaintiff is not in a position to challenge instructions numbered 11 and 13. They are chargeable to him as appellant because the record is silent as to their source, whether requested by the plaintiff or the defendants or given by the court upon its own motion.

The court gave two instructions (Numbers 15 and 16) which dealt with rescission of contract. Plaintiff takes exception to them not upon the ground that they incorrectly expressed the law but that the court in effect committed to the jury the interpretation of the written contracts of October, 1947, and March, 1948. Whether or not that was error seems immaterial in view of the fact that the jury arrived at correct interpretations.

It was not error to deny plaintiff's instructions 19-22, inclusive. They would, erroneously, have given the jury May

---

[7] Plaintiff's requested instructions bear one series of numbers; those actually given by the court, another series of numbers.

5th instead of April 24, 1947, as the date when the obligation for the payment of the purchase price was incurred.

Plaintiff's instructions Numbers 7 and 24-27, inclusive, were offered by him in support of his claim that the first written articles of partnership were effective as of May 3, 1947. The court's refusal to give them, whether proper or improper, could not have been prejudicial in view of the fact that the jury found with plaintiff on that point.

We find no abuse of discretion in the denial of plaintiff's motion to amend his complaint. The amendments, designed to conform to proof, did not present any issues concerning which the proof, as we view it, furnished a predicate for a different judgment that was rendered.

We find no merit in plaintiff's claim that it was error to deny his motion for judgment notwithstanding the verdict and his motion to vacate the judgment as to the Williamsons and enter judgment in his favor against them.

The portion of the judgment appealed from and the order denying the motion to vacate a portion of the judgment and render judgment in plaintiff's favor are affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied December 29, 1955, and appellant's petition for a hearing by the Supreme Court was denied January 25, 1956.