RON CASE ROOFING AND ASPHALT PAVING, INC., a Utah corporation; and Ron Case and Mark Thomas, individuals, Plaintiffs and Appellees,

v.

Gerald V. BLOMQUIST and Bradley K. Panos, individuals, and Vesper Financial Corporation, a Utah corporation, Defendants and Appellants.

No. 19748.

Supreme Court of Utah.

May 11, 1989.

 

Randall A. Mackey, Kevin N. Anderson, Salt Lake City, for defendants and appellants.

William T. Thurman, Evan A. Schmutz, Salt Lake City, for plaintiffs and appellees.

ZIMMERMAN, Justice:

Defendants Vesper Financial Corporation ("Vesper") and Gerald V. Blomquist and Bradley K. Panos, shareholders of Vesper (collectively "the Vesper group"), appeal from a grant of summary judgment that requires the Vesper group to pay $17,500

plus interest to Ron Case Roofing and Asphalt Paving, Inc. ("Ron Case"). The trial court held as a matter of law that Ron Case was entitled to recover from the Vesper group because Ron Case was a third-party beneficiary under a settlement agreement between and among Vesper Corporation and its shareholders and Robert M. Brooks Construction Company, Inc., and its shareholders. On appeal, the Vesper group claims that the trial court erred in granting summary judgment because there remained issues of material fact as to whether Ron Case had a right to recover from the Vesper group under a third-party beneficiary theory or, alternatively, that even if Ron Case had a right to recover, the Vesper group had a valid legal defense to that claim. Ron Case, on the other hand, asserts that the trial court erred in denying its request for attorney fees. We affirm the trial court in all respects.

It is necessary to provide some background. Beginning in the late 1970s, Vesper owned and developed several real estate projects in the Salt Lake City area. The general contractor for the Vesper projects was Brooks Construction, a Utah corporation. Brooks Construction hired Ron Case under subcontract to perform asphalt paving work at one of Vesper's projects, which was known as the Burton Plaza project.

Sometime in 1981, a dispute arose between Brooks Construction, Ron Case, and others working on the Burton Plaza project. As a result, Brooks Construction brought suit against Ron Case and the others. Ron Case answered and filed a counterclaim for money owed for work on the project. In March of 1983, during the course of trial between Brooks Construction and Ron Case, the parties reached a stipulated settlement under which Brooks Construction dropped its claims against Ron Case and stipulated to the entry of judgment for $17,500 in favor of Ron Case on the counterclaim. Brooks Construction never paid this judgment.

During 1982 and 1983, disputes also developed between Vesper and Brooks Construction over the various Vesper projects. At that time, the principal shareholders of Vesper were Gerald V. Blomquist, Bradley K. Panos, and Robert M. Brooks, and the principal shareholders of Brooks Construction were Robert M. Brooks, Daniel L. Smith, Gerald V. Blomquist, and Gregory K. Panos. As can be seen, both Vesper and Brooks Construction had several shareholders in common. In an attempt to resolve their disputes and restructure their relationships, Vesper and Brooks Construction and their respective shareholders entered an agreement entitled "Settlement Agreement," dated January 24, 1983. Under the terms of the agreement, the shareholders of both Vesper and Brooks Construction cross-conveyed their respective interests in the two corporations so as to eliminate any common ownership. In connection with this restructuring, the two corporations and the newly aligned shareholders of each (referred to as "the Vesper group" and "the Brooks group," respectively) also made various promises to each other concerning obligations arising from the Vesper projects.

Ron Case filed the present suit against the Vesper group in May of 1983, after unsuccessful efforts to collect the $17,500 stipulated judgment from Brooks Construction. Ron Case claimed that under the terms of the January 24, 1983, settlement agreement, the Vesper group was responsible for Brooks' obligations to Ron Case arising out of Vesper's Burton Plaza project. Ron Case moved for summary judgment.

The trial court found that no genuine issues of material fact existed and held the Vesper group liable to Ron Case. The trial court also held that although the Vesper group might have a claim against the Brooks group for breach of the January 24, 1983, settlement agreement, it could not use that claim as a defense to Ron Case's suit. Finally, the trial court denied Ron Case's request for attorney fees.

 We consider first the claims of the Vesper group; we will then deal with

Ron Case's claim. Our standard of review when considering challenges to a summary judgment is settled. A grant of summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *see, e.g., Geneva Pipe Co. v. S & H Insurance Co.*, 714 P.2d 648, 649 (Utah 1986). In determining whether the trial court correctly found that there was no genuine issue of material fact, we view the facts and inferences to be drawn therefrom in the light most favorable to the losing party. *E.g., id.* at 649; *Atlas Corp. v. Clovis National Bank,* 737 P.2d 225, 229 (Utah 1987); *Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 802 (Utah 1985). And in deciding whether the trial court properly granted judgment as a matter of law to the prevailing party, we give no deference to the trial court's view of the law; we review it for correctness. *E.g., Atlas Corp.,* 737 P.2d at 229; *Kimball v. Campbell,* 699 P.2d 714, 716 (Utah 1985); *see also Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985).

The Vesper group's first attack on the summary judgment is a claim that the settlement agreement did not give Ron Case a right to recover from the Vesper group the unpaid judgment owed it by Brooks Construction. The Vesper group argues that it did not intend to assume any of Brooks Construction's liabilities to Ron Case and that the trial court should have permitted Vesper to introduce extrinsic evidence on that point.

■ The Vesper group's contention about what it really intended and its attempt to rely on extrinsic evidence in support of that contention ignores the settled rule that in interpreting a contract, we first look to the four corners of the agreement to determine the intentions of the parties. *E.g., Atlas Corp.,* 737 P.2d at 229; *Stanger v. Sentinel Sec. Life Ins. Co.,* 669 P.2d 1201, 1205 (Utah 1983). The use of extrinsic evidence is permitted only if the document appears to incompletely express the parties' agreement or if it is ambiguous in

expressing that agreement. *E.g., Atlas Corp.,* 737 P.2d at 229; *Kimball v. Campbell,* 699 P.2d at 716. Neither of these tests is met here.

■ First, the document does not appear to incompletely express the parties' agreement. The settlement agreement of January 24, 1983, deals in a comprehensive fashion with the relationship between the Brooks group and the Vesper group, as it relates both to their various intercorporate dealings and to the Vesper projects. This indicates that the parties' whole agreement is contained in the document. *See Terry's Sales, Inc. v. Vander Veur,* 618 P.2d 29, 32 (Utah 1980). This impression is confirmed by the fact that the contract contains an integration clause in paragraph 19(c) which states that the "agreement sets forth the entire understanding among the parties and shall not be amended or terminated except by a written instrument duly executed by all the parties hereto." The trial court therefore properly precluded the Vesper group from introducing extrinsic evidence on the premise that the instrument is not complete. *See State Bank of Lehi v. Woolsey,* 565 P.2d 413, 418 (Utah 1977).

Second, the agreement is not ambiguous in expressing the parties' agreement regarding the debts incurred by Brooks in connection with the Vesper projects. Paragraph 4 states in pertinent part:

> Panos, Blomquist and Vesper, jointly and severally, agree to pay all indebtedness which is presently outstanding or in the future may arise which claims relate to the furnishing of labor, materials, equipment, tools, fuel, supplies and other items furnished to or incorporated into the Vesper Projects.

In addition, Ron Case argues that the trial court's judgment could be sustained on the basis of paragraph 2, which provides as follows:

> Panos, Blomquist and Vesper, jointly and severally, hereby indemnify and hold harmless Brooks, Smith and Brooks Construction from and against any and all

claims, demands, rights, causes of action or other liabilities or obligations of any kind, whether known or unknown, asserted or unasserted, by any person on account of or arising out of the Vesper Projects or the conduct of Vesper's business and affairs and the conduct of the business and affairs of Panos and Blomquist.

Whatever the legal consequences of this language, it is plain and unambiguous. And we find nothing in the other provisions of the settlement agreement that would undermine the effect of these two paragraphs. Therefore, we conclude that the trial court properly excluded from consideration the extrinsic evidence proffered by the Vesper group on the grounds of ambiguity and correctly determined the issue presented as a matter of law.

The next question is whether, under the terms of the settlement agreement, Ron Case had a legal right to proceed against the Vesper group to recover Brooks Construction's unpaid judgment. We begin by reviewing the applicable principles of third-party beneficiary law. Section 302 of the Restatement (Second) of Contracts sets forth the governing principles for determining whether a nonparty is entitled to the rights of a third-party beneficiary under a contract. *See Clark v. American Standard, Inc.*, 583 P.2d 618, 620 (Utah 1978). Section 302 provides:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302, at 439–40 (1981).

 For a third party to have enforceable rights under a contract, then, that party must be an "intended beneficiary" of the contract, and the intention of the parties is to be determined from the terms of the contract as well as the surrounding facts and circumstances. *See, e.g., Wasatch Bank of Pleasant Grove v. Surety Ins. Co. of Cal.*, 703 P.2d 298, 300 (Utah 1985); *Tracy Collins Bank & Trust v. Dickamore*, 652 P.2d 1314, 1315 (Utah 1982); *Mel Trimble Real Estate v. Fitzgerald*, 626 P.2d 453, 454 (Utah 1981); *E.B. Roberts Constr. Co. v. Concrete Contractors, Inc.*, 704 P.2d 859, 865 (Colo.1985) (en banc). The intent of the contracting parties to confer a separate and distinct benefit must be clear. *Rio Algom Corp. v. Jimco Ltd.*, 618 P.2d 497, 506 (Utah 1980); *see also Mel Trimble Real Estate v. Fitzgerald*, 626 P.2d 453, 454 (Utah 1981) (one only incidentally benefitted may not maintain an action against the promisor).

We now consider the terms of paragraph 4 and paragraph 2 of the settlement agreement under these principles to determine whether Ron Case qualifies as a third-party beneficiary. Paragraph 4 states quite clearly that the members of the Vesper group "agree to pay all indebtedness which is presently outstanding or in the future may arise which claims relate to the furnishing of labor, materials, equipment, tools, fuel, supplies and other items furnished to or incorporated into the Vesper Projects." Giving these words their "usual and ordinary meaning," *Commercial Bldg. Corp. v. Blair*, 565 P.2d 776, 778 (Utah 1977), it is plain that the parties intended that the Vesper group would pay all obligations of Brooks due those furnishing labor and materials on any Vesper project, a description that includes Ron Case. Judged by the standards summarized in section 302 of the Restatement and followed by our cases, Ron Case is, therefore, a third-party beneficiary under the settlement agreement, as the trial court held. *See Wasatch Bank of Pleasant Grove*, 703 P.2d at 300; *Tracy Collins Bank & Trust*, 652 P.2d at 1315. This conclusion is sup-

ported by cases from other jurisdictions which have held that one who assumes a debtor's obligations creates enforceable third-party beneficiary rights in the debtor's creditors. *See, e.g., Griffin v. Williamson,* 137 Cal.App.2d 308, 317, 290 P.2d 361, 368 (1955); *Treasure Valley Foods, Inc. v. J–M Poultry Packing Co.,* 98 Idaho 366, 368, 564 P.2d 978, 980 (1977); *Kennedy v. Lynch,* 85 N.M. 479, 482, 513 P.2d 1261, 1263 (1973); *McMillan v. Torre,* 84 Nev. 556, 559, 445 P.2d 160, 161 (1968); *see also* 2 Corbin, *Corbin on Contracts* § 363, at 261–63 (1950); *Argys v. McGlothlen,* 130 Colo. 490, 495, 276 P.2d 983, 985 (1954) (en banc).

■ We next consider Ron Case's alternative contention that the indemnification language of paragraph 2 of the settlement agreement also gave it third-party beneficiary rights against the Vesper group. Technically, we need not reach the issue, having found ample support for the trial court's ruling in paragraph 4. However, the issue raised merits discussion. This Court has not previously addressed the question of whether the inclusion of a commonplace indemnification and hold harmless provision in a contract is sufficient to support a finding that the parties intended to create third-party beneficiary rights in an obligee of the indemnitee. The few jurisdictions that have addressed this issue have concluded that run-of-the-mill indemnity and hold harmless provisions, without more, are insufficient to show an intent to benefit nonparties to the contract and, therefore, do not give rise to third-party beneficiary rights. *See, e.g., Simons v. Tri–State Constr. Co.,* 33 Wash.App. 315, 323, 655 P.2d 703, 708 (1983); *Clark v. Compania Ganadera de Cananea,* 94 Ariz. 391, 403, 385 P.2d 691, 699, *supplemented by* 95 Ariz. 90, 387 P.2d 235 (1963).

Of course, other language or facts may indicate an intention to benefit third parties, but the general rule appears to be that no such intention will be inferred from the usual indemnity language alone. In the present case, paragraph 2 of the settlement agreement contains nothing beyond usual indemnity and hold harmless language. We hold, therefore, that the Vesper group's promises to indemnify Brooks Construction did not create enforceable rights in Ron Case. Ron Case's right to sue the Vesper group on the Brooks judgment rests on paragraph 4 only.

In its second argument on appeal, the Vesper group contends that even if Ron Case was entitled to sue the Vesper group for the amount due from Brooks, the Vesper group had either a valid legal defense to the claim or the right to a setoff. Specifically, the Vesper group claims that since the settlement agreement was intended to ensure that Brooks Construction properly performed all remaining work on the Vesper projects and Brooks Construction did not do this, the consideration for the promise to assume any obligations to third parties failed and the contract is void.[1] Alternatively, the Vesper group contends that even if there was no failure of consideration, Brooks Construction's failure to perform amounts to a breach of the settlement agreement and that breach is assertable against Ron Case either as a complete bar to its claim or as the basis for a counterclaim and setoff.

■ We first address the failure-of-consideration argument. It is true that if a promisor has a defense to the entire contract that would be good against the promisee, it can be asserted against a third-party beneficiary. *Assets Realization Co. v. Cardon,* 72 Utah 597, 606, 272 P. 204, 206–07 (1928). Such a defense would in-

---

1. Paragraph 13 of the settlement agreement of January 24, 1983, provides as follows:

 Brooks and Brooks Construction warrant to Panos, Blomquist and Vesper that all work performed by Brooks and Brooks Construction on or in connection with the Holladay Office Building located at 2225 East 4800 South, Salt Lake City, Utah and the Brighton Office Building located at 7055 South Highland Drive, Salt Lake City, Utah is free of faults and defects and that such work has been performed and completed in accordance with the plans and specifications and in a good and workmanlike manner.

clude failure of consideration, *inter alia.* 2 Williston, *Williston on Contracts* §§ 394, 395 (3d ed. 1959); *see also* 4 Corbin, *Corbin on Contracts* § 818 (1951) [hereinafter Corbin]. However, in the present case, the Vesper group had no such defense to the contract.

■ A breach by Brooks Construction of its promise or representation in paragraph 13 of the settlement agreement that all work performed by Brooks on two of the Vesper projects was "free of faults and defects and that such work has been performed and completed in accordance with the plans and specifications and in a good and workmanlike manner" would have constituted a failure of consideration only if the performance of that promise or the truth of that representation were the primary purpose of the contract. *See Copper State Leasing Co. v. Blacker Appliance & Furniture Co.,* 770 P.2d 88, 92 (Utah 1988) (Greenwood, Court of Appeals Judge, sitting by designation). But as a matter of law, it can be said that the settlement agreement had no such limited purpose. All its terms emphasize the statement in paragraph 16 that the settlement agreement was entered into "solely for the purpose of completely settling and compromising claims" that Vesper and Brooks Construction may have against each other arising from the Vesper projects. This broad purpose was to be accomplished through the exchanges of promises by Vesper and Brooks Construction, and by the principal shareholders of both, to restructure the two corporations so as to give each entirely separate ownership and to apportion the liabilities of each. Because a breach of paragraph 13 alone could not constitute a failure of consideration, it could not void the Vesper group's duty to pay the amount owed to Ron Case from Brooks Construction.

■ We next address the Vesper group's alternative argument that even if the contract is not voided by Brooks Construction's breach of paragraph 13, that breach is assertable against Ron Case as a full or partial setoff to its claim. But the law is to the contrary. While a promisor may assert the voidness of the underlying contract as a defense in an action by a third-party beneficiary, it may not assert against that beneficiary a mere breach of the contract by the promisee. As Corbin states, "Wrongful acts of the promisee, subsequent to the making of the contract, that would greatly affect his own right, may not affect the beneficiary's right at all." Corbin at § 818. Therefore, while the Vesper group may have a claim against Brooks Construction for breaches of paragraph 13 of the settlement agreement, *e.g.,* Corbin at § 819, those claims cannot be asserted as defenses to Ron Case's claim against the Vesper group on Brooks' indebtedness. Accordingly, the trial court properly held that the Vesper group had no legal defenses to Ron Case's claim.

■ The final point we address is Ron Case's claim that it was entitled to an award of attorney fees. It bases this claim on paragraph 19(e) of the settlement agreement, which states in pertinent part:

In the event any dispute or contest shall arise hereunder or any party shall breach or fail to perform or discharge any of its obligations hereunder, any party to this Agreement who shall prevail in litigation concerning any such dispute, contest or failure to perform or discharge, shall be entitled to an award ... of reasonable attorneys' fees....

Ron Case argues that as a third-party beneficiary forced to sue to enforce its rights under the settlement agreement, it is entitled to the same rights that Brooks Construction, the promisee, would have had if it had successfully brought an action against the Vesper group to enforce the liability created by paragraph 4 or 2. Although this argument appears to be without merit, we will not address it for the reason that Ron Case failed to cross-appeal the trial court's denial of its request for attorney fees. This failure prevents Ron Case from now raising the attorney fees

issue before this Court. *See, e.g.,* Utah R.Civ.P. 74(b) (repealed with adoption of Utah R.App.P. (now R. Utah S.Ct.), effective Jan. 1, 1985); *see* R. Utah S.Ct. 4, 9; *Labrum v. Rickenbach,* 711 P.2d 225, 227 (Utah 1985); *American Coal Co. v. Sandstrom,* 689 P.2d 1, 4 (Utah 1984); *Bentley v. Potter,* 694 P.2d 617, 622 (Utah 1984); *Terry v. Zion's Co-op. Mercantile Inst.,* 617 P.2d 700, 701–02 (Utah 1980).

The trial court's decision is affirmed in all respects.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.