David K. GORDON, Plaintiff,

v.

CRS CONSULTING ENGINEERS, INC., fka Caldwell, Richards & Sorenson, Inc., Defendant, Crossclaim Plaintiff and Appellant,

and

Skyline Construction Co., a partnership, and Leon Van Sickle and Don Van Sickle, partners, dba Skyline Construction Co., Defendants, Crossclaim Defendants and Appellees.

No. 900336–CA.

Court of Appeals of Utah.

Nov. 1, 1991.

James C. Jenkins, Logan, for defendant, crossclaim plaintiff and appellant.

Mark J. Williams, Jaryl L. Rencher and Paul H. Matthews, Salt Lake City, for defendants, crossclaim defendants and appellees.

Before BILLINGS, JACKSON and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

CRS Consulting Engineers, Inc. ("CRS") appeals from an order dismissing its crossclaim for indemnification against Skyline Construction Co. ("Skyline"). We affirm.

### BACKGROUND

This case arises from a personal injury suit. Plaintiff David K. Gordon was injured when he stepped into a sinkhole at the Utah State Training School, where he was employed. The sinkhole resulted from the construction of a storm drain system at the school. CRS did the engineering and design work for the system and Skyline was the contractor. Both CRS and Skyline performed pursuant to separate contracts with the State of Utah. Gordon alleged that CRS and Skyline had been negligent, respectively, in the design and construction of the storm drain system.

Before trial, CRS settled with Gordon for $100,000. The jury, in special verdicts, found that Skyline was negligent and that its negligence was the proximate cause of Gordon's injuries. The jury also found that CRS was negligent but that its negligence was not a proximate cause of Gordon's injuries. The trial resulted in a judgment of one million dollars for Gordon against Skyline. Offsetting this by the CRS settlement, Skyline paid $900,000 to Gordon.

CRS and Skyline had crossclaimed against each other, each contending that it was contractually indemnified by the other. These crossclaims were dismissed. CRS appeals, contending that the trial court erred in holding that CRS was not indemnified by Skyline for its settlement with Gordon.

### ISSUE

CRS argues that the contract between Skyline and the State provides indemnification for CRS as an employee and/or agent of the State.

### ANALYSIS

Interpretation of a contract usually presents a question of law. *Village Inn Apartments v. State Farm Fire and Casualty Co.*, 790 P.2d 581, 582 (Utah App. 1990). The question of whether a contract is ambiguous is also one of law, which we review for correctness. *Jarman v. Reagan Outdoor Advertising*, 794 P.2d 492, 494 (Utah App.1990). Extrinsic evidence may be considered only if the agreement is ambiguous or appears to incompletely reflect the parties' agreement. *Ron Case Roofing & Asphalt v. Blomquist*, 773 P.2d 1382, 1385 (Utah 1989). If the contract is not ambiguous, and therefore no extraneous evidence is considered, we review for

correctness. *Terry v. Price Mun. Corp.*, 784 P.2d 146, 149 (Utah 1989).

In interpreting a contract, we look at the contract as a whole to determine the parties' intent. *Ron Case Roofing*, 773 P.2d at 1385. We will accord commonly accepted meanings to the words and phrases of a contract whenever possible. *Bear River Mut. Ins. Co. v. Wright*, 770 P.2d 1019, 1020 (Utah App.1989).

"Utah courts apply the rule of strict construction when confronted with an indemnity agreement." *Pickover v. Smith's Management Corp.*, 771 P.2d 664, 666 (Utah App.1989). Under this rule, there is a presumption against an intent to indemnify unless " 'that intention is clearly and unequivocally expressed.' " *Id.* at 667 (quoting *Union Pac. R.R. v. El Paso Nat'l Gas Co.*, 17 Utah 2d 255, 408 P.2d 910, 913 (1965)). When construing indemnification clauses, no intention to confer third-party beneficiary rights will be inferred from the indemnity language alone. *Ron Case Roofing*, 773 P.2d at 1387.

The contractual provisions in question are found in three documents. First, Article XVII of the contract between CRS and the State ("Engineers Contract") is entitled "Independent Contractor." It states, in part, that CRS is "to be considered an independent contractor, and, as such, shall have no authority to bind the State of Utah ... nor to perform any acts as agent for the State of Utah except as herein expressly set forth." In addition to providing plans and specifications for the project, the Engineers Contract also requires CRS to perform certain monitoring and oversight duties during the construction phase of the project. These include, for example, interpreting contract documents, assuring progress in accordance with contract documents, and preparing and recommending change orders.

Second, the contract between Skyline and the State ("Construction Contract"), incorporates by reference certain General Conditions and Specifications governing the project ("Specifications"). Paragraph 28 of the Specifications states, in part, as follows:

*Indemnification.* "Indemnities" shall be defined for the purpose of this section: The State of Utah and all institutions, agencies, departments, authorities, and instrumentalities of the State of Utah, and any member of their governing bodies, or their boards or commissions, or any of their elected or appointed officers, or any of their employees or authorized volunteers.

The contractor will protect, indemnify and hold harmless indemnities from every kind and character of damages, losses, expenses, demands, claims and causes of action arising against *indemnities and their subcontractors, their officers, agents, employees* or other person, firm or corporation whatsoever from, against, or on account of any and all claims, damages, losses, demands causes of action and expenses (including attorneys fees) arising out of or resulting from any violation or alleged violation by contractor, his officers, agents and employees, or his subcontractors or their officers, agents and employees of any federal, state or local law, statute or ordinance, relating to the work to be performed by the contractor on the project growing out of or incident to the work to be performed and operations to be conducted by the contractor, or his subcontractors under this agreement, whether such claims, death or damages, result from or are claimed to have resulted from the negligence of contractor, his officers, agents or employees, or his subcontractors ... or whether resulting from or alleged to have resulted from the concurrent negligence of indemnities and/or contractors, their officers, agents or employees.

(Emphasis added).

Third, the Construction Contract provides as follows in Article 11:

The Contractor agrees that it/he shall at all times protect and indemnify and save harmless, the State of Utah and *all institutions, agencies, departments, authorities and instrumentalities of the State of Utah* and any member of their governing bodies or of their boards or commissions or *any of their employees* or au-

thorized volunteers as described in the general conditions of the project specifications which are included herein by reference, from any and all claims, damages of every kind and nature made, rendered or incurred by or in behalf of any person or corporation whatsoever, including the parties hereto and their employees that may arise, occur or grow out of any acts, actions, work or other activity done by the said contractor in the performance and execution of this contract.

(Emphasis added).

We must determine if the trial court correctly construed the meaning of the relevant contractual provisions without allowing extrinsic evidence to be introduced.

■■■■ CRS argues that by virtue of the Engineers Contract, it was an agent of the State because the contract describes a principal/agent relationship and because the State delegated certain engineering duties to CRS. Therefore, CRS contends, it is included in the indemnification provisions of the Specifications as an agent of the State. We disagree. Status as an independent contractor and an agent are not always mutually exclusive. *See Cahill v. Waugh*, 722 P.2d 721, 724 (Okl.App.1986). However, in this case the Engineers Contract specifically states that CRS is an independent contractor with no authority to bind the State or act as an agent of the State "except as herein expressly set forth." Looking at the contract as a whole, the relationship is still primarily one of owner and independent contractor. Most importantly, moreover, given that primary relationship, there is no language in the indemnification provisions indicating an intention to cover an independent contractor performing services for the State where there may also be incidental agency conduct. Caselaw previously cited disallows inferring such an intent absent specific language. *See Ron Case Roofing*, 773 P.2d at 1387; *Pickover*, 771 P.2d at 667. We acknowledge, however, that it is still arguable whether limited actions as the State's agent might bring CRS within the indemnification protection. However, our follow-

ing analysis of the contractual language disposes of that question.

■■■ We determine that a close reading of the Specifications precludes coverage for CRS as an agent or employee under that document. The indemnification clause promises that the contractor will indemnify *indemnities* for claims against them and their agents or employees. "Indemnities" is defined as including only the State, its agencies, departments, authorities, and instrumentalities—not all agents or employees of the same. Accordingly, indemnification benefits extend only to those defined indemnities. Therefore, even if a claim against CRS can be considered as one against an agent of an indemnity, only the indemnity, not the agent, is protected.

■■■ Further, the clause goes on to say that indemnification applies for claims of violations of "any federal, state or local law, statute or ordinance ... by contractor." The claims in this case were solely for negligence, not for any violation of law.

■■■ Next, CRS argues it is entitled to indemnification as a "statutory employee" of the State pursuant to the Construction Contract, which refers to employees of the State and its institutions, agencies, departments, authorities and instrumentalities. CRS refers us to the definition of employee found in the Utah Worker's Compensation Act § 35-1-42(5)(a) (1988) (the "Act") and contends that it is controlling. This argument fails for several reasons. First, it is contrary to the contractual provision that CRS acted as an independent contractor. We note that even under the Act, it is possible to be an employee for some limited purpose but an independent contractor for other purposes. *See Christean v. Industrial Comm'n.*, 113 Utah 451, 196 P.2d 502, 505 (1948). However, CRS did not, under the facts of this case, act as employee with regard to wages, benefits, or other usual indicia. Second, this issue is not raised within the parameters of the Act but is instead a question of contract interpretation. The statutory definition is not applicable under these circumstances. *See Palmer v. Davis*, 808 P.2d 128, 130 n. 2 (Utah App.1991). Third, *Pate v. Marathon*

*Steel Co.,* 777 P.2d 428, 431 (Utah 1989) largely limits application of the statutory employer or employee status to situations of an employer who pays the wages of an employee, and the employer's officers, agents, and employees for purposes of immunity from liability. There is no such relationship in this case.

## CONCLUSION

The language of the indemnification provisions includes no intention to extend coverage to CRS as either an agent or employee of the State. To do so tortures the contractual language beyond its plain and usual meaning. It also is contrary to the law's presumption against indemnification benefits for third-parties absent clear and unequivocal coverage language.

We, therefore, affirm the trial court's dismissal of CRS's counterclaim against Skyline.

BILLINGS and JACKSON, JJ., concur.